**AMERICAN TRANSITIONAL CARE CENTERS OF TEXAS, INC. d/b/a American Transitional Hospital, Petitioner,**

v.

**Teofilo PALACIOS and Maria Palacios, individually and a/n/f of Gloria Janeth Palacios and Rocio Daniela Palacios, minors, Maria Angelica Palacios, and Sentry Insurance, a mutual company, Respondents.**

No. 99–1311.

Supreme Court of Texas.

Argued Dec. 6, 2000.

Decided May 10, 2001.

Rehearing Overruled June 28, 2001.

Matthew T. McCracken, John C. Marshall, James C. Marrow, Marshall & McCraken, Wesley Nagorny, Marshall & Gonzalez, Houston, for Petitioner.

D. John Leger, Leger & Coplen, Levon G. Hovnatanian, Martin Disiere & Jefferson, Houston, Mickey C. Shyrock, Law Office of Mickey C. Shyrock, Athens, for Respondents.

Justice HANKINSON delivered the opinion of the Court.

In this medical-malpractice case we determine the standards for reviewing an expert report under section 13.01 of the Medical Liability and Insurance Improvement Act. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01. The trial court dismissed the Palacioses' medical-malpractice claims against American Transitional Care Centers, Inc., d/b/a American Transitional Hospital, because it determined that the Palacioses' expert report did not show a good-faith effort to provide a fair summary of the expert's opinions about the standard of care, breach, and causation, as required by section 13.01. *See id.* § 13.01(d), (e), (*l*), (r)(6). The court of appeals, after evaluating the trial court's decision as it would a summary-judgment decision, reversed, holding that the report did meet the statutory requirements. 4 S.W.3d 857, 860.

We hold that a trial court's decision to dismiss a case under section 13.01(e) is reviewed for abuse of discretion. We further hold that to constitute a good-faith effort to provide a fair summary of an expert's opinions under section 13.01(*l*), an expert report must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. In this case, the trial court did not abuse its discretion in concluding that the challenged report does not meet the statutory requirements and in dismissing with prejudice the claims against American Transitional. Accordingly, we reverse the court of appeals' judgment and dismiss with prejudice the Palacioses' claims.

Teofilo Palacios suffered brain damage and other severe injuries following a two-story fall at work. After almost a year in an intensive rehabilitation program, he was transferred to American Transitional Hospital for further rehabilitation. Although Palacios at that time was able to

communicate with others and respond to simple commands, he required assistance with most daily tasks. In addition, due to the severity of his brain damage, Palacios' physicians prescribed bed restraints for him. Nevertheless, while a patient at American Transitional, Palacios fell from his bed and required additional medical care for his injuries. His family claims that this fall caused him to sustain further brain injury, which impaired his ability to communicate with others and to assist them in his care.

Palacios and his family sued American Transitional and the treating doctors, respectively, for negligently failing to prevent the fall and negligently treating him after the fall. After ninety days passed from the date the Palacioses filed suit, American Transitional, along with the other defendants, moved to require the Palacioses to file a $7,500 cost bond, as required by section 13.01(b) of the Medical Liability and Insurance Improvement Act. *See* TEX. REV.CIV. STAT. ANN. art. 4590i, § 13.01(b) (authorizing a trial court to order a plaintiff to file a $7,500 cost bond for each defendant physician or health-care provider if the plaintiff has not complied with the expert-report or $5,000 cost-bond requirement in section 13.01(a)); *id.* § 13.01(a) (requiring the plaintiff to file either an expert report or a $5,000 cost bond for each defendant physician or health-care provider within ninety days of filing suit). The trial court granted the motion, and the Palacioses filed a cost bond for each defendant.

After 180 days passed from the date the Palacioses filed suit, American Transitional moved to dismiss the case against it because the Palacioses did not file an expert report and curriculum vitae, or nonsuit the claims against American Transitional, as section 13.01(d) of the Act requires. *Id.* § 13.01(d), (e). The Palacioses moved for

an extension of time to file the report, which the trial court granted. *See id.* § 13.01(f), (g). The Palacioses then filed a report prepared by Dr. Catherine F. Bontke, who treated Palacios at the first rehabilitation hospital. American Transitional again moved to dismiss under section 13.01(e), claiming that the report did not satisfy the statutory requirements. *See id.* § 13.01(*l*), (r)(6). The trial court granted the motion, dismissed with prejudice the claims against American Transitional, and severed those claims to make the judgment against American Transitional final. *See id.* § 13.01(e).

The Palacioses appealed, and with one justice dissenting, the court of appeals reversed and remanded after using summary-judgment review standards to evaluate the sufficiency of the expert report. 4 S.W.3d at 860. After indulging every reasonable inference in the Palacioses' favor and eliminating any deference to the trial court's decision, the court of appeals concluded that the trial court erred in dismissing the case because the Palacioses made a good-faith effort to provide a report that met the requirements of section 13.01(r)(6). *Id.* at 862–63. American Transitional petitioned for review challenging both the standard of review applied by the court of appeals and the sufficiency of the Palacioses' report.

■ Texas courts have long recognized the necessity of expert testimony in medical-malpractice cases. *E.g., Hart v. Van Zandt,* 399 S.W.2d 791, 792 (Tex.1965); *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779, 782 (1949). "There can be no other guide [than expert testimony], and where want of skill and attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury." *Hart,* 399 S.W.2d at 792. Because expert testimony is crucial to a medical-malpractice case,

knowing what specific conduct the plaintiff's experts have called into question is critical to both the defendant's ability to prepare for trial and the trial court's ability to evaluate the viability of the plaintiff's claims. This makes eliciting an expert's opinions early in the litigation an obvious place to start in attempting to reduce frivolous lawsuits. *See* HOUSE COMM. ON CIV. PRAC., BILL ANALYSIS, Tex. H.B. 971, 74th Leg., R.S. (1995).

Accordingly, in section 13.01, the Legislature requires medical-malpractice plaintiffs, within 180 days of filing suit, either to provide each defendant physician and health-care provider with an expert report and the expert's curriculum vitae, or to nonsuit the claims. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d). If the plaintiff fails within the time allowed either to provide the expert reports and curriculum vitae, or to nonsuit the case, the trial court must sanction the plaintiff by dismissing the case with prejudice, awarding costs and attorney's fees to the defendant, and ordering the forfeiture of any applicable cost bond necessary to pay that award. *Id.* § 13.01(e). If the plaintiff does timely file a report, the defendant may move to challenge the adequacy of the report, and the trial court must grant the motion if "it appears to the court ... that the report does not represent a good faith effort to comply with the definition of an expert report." *Id.* § 13.01(*l*). The statute defines an expert report as "a written report by an expert that provides a fair summary of the expert's opinions ... regarding applicable standards of care, the manner in which the care rendered ... failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 13.01(r)(6). If a trial court determines that an expert report does not meet these statutory requirements and the time for filing a report has passed, it must then dismiss with prej-

udice the claims against the defendant who has challenged the report. *Id.* § 13.01(e).

American Transitional contends that a trial court's determination about the adequacy of an expert report should be reviewed under an abuse-of-discretion standard. The Palacioses respond that whether a report meets the requirements of subsections 13.01(*l*) and (r)(6) is a question of law. They suggest that a trial court's decision on the adequacy of a report should be reviewed as a court would review a summary-judgment decision: that is, by indulging every reasonable inference and resolving any doubts in the nonmovant's favor, and eliminating any deference to the trial court's decision. We agree with American Transitional.

▆▆ The plain language of section 13.01 leads to the conclusion that abuse of discretion is the proper standard. First, the statute directs the trial court to grant a motion challenging the adequacy of an expert report if it "appears to the court" that the plaintiffs did not make a good-faith effort to meet the statutory requirements. *Id.* § 13.01(*l*). This language plainly vests the trial court with discretion. *See* TEX. GOV'T CODE § 312.002. ("[W]ords shall be given their ordinary meaning."). Second, the statute states that dismissal under section 13.01(e) is a sanction: If the requirements of section 13.01(d) are not met, the court must "enter an order as sanctions" dismissing the case and granting the defendant its costs and attorneys' fees. TEX.REV.CIV. STAT. ANN . art. 4590i, § 13.01(e). Sanctions are generally reviewed under an abuse-of-discretion standard. *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex.1990). And we presume the Legislature was aware of the standard of review ordinarily applied in sanctions cases when it explicitly identified a court's dismissal under section 13.01(e) as a sanction.

*See McBride v. Clayton,* 140 Tex. 71, 166 S.W.2d 125, 128 (1943) ("All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it.").

Nevertheless, the court of appeals concluded that the usual standard of review for sanctions should not apply here. The court reasoned that the provisions of article 4590i at issue here were intended to discourage frivolous lawsuits, while sanctions, in contrast, are a response to litigation misconduct. We disagree with this distinction.

Filing a frivolous lawsuit can be litigation misconduct subject to sanction. *See* Tex.R. Civ. P. 13 (imposing sanctions for filing groundless motions, pleadings, or other papers in bad faith or for the purposes of harassment). And one purpose of the expert-report requirement is to deter frivolous claims. House Comm. on Civ. Prac., Bill Analysis, Tex. H.B. 971, 74th Leg., R.S. (1995). The Legislature has determined that failing to timely file an expert report, or filing a report that does not evidence a good-faith effort to comply with the definition of an expert report, means that the claim is either frivolous, or at best has been brought prematurely. *See id.* This is exactly the type of conduct for which sanctions are appropriate. *See TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 918 (Tex.1991) (holding that "death-penalty" sanctions are appropriate when a party's discovery abuse justifies a presumption that its claims lack merit). For these reasons, we hold that an abuse-of-discretion standard of review applies to a trial court's decision to dismiss a case under section 13.01(e).

■ We next consider whether the trial court abused its discretion in dismissing the Palacioses' claims against American Transitional. The parties disagree about how to determine a report's adequacy under section 13.01(*l*). American Transitional argues that the trial court must engage in a two-step process: (1) the trial court must determine whether the report constitutes a fair summary of the expert's opinions, Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(r)(6); and (2) if the trial court concludes that the report is not a fair summary, it must then look outside the report at the plaintiff's conduct to determine whether the plaintiff made a good-faith effort to meet the statutory requirements, *id.* § 13.01(*l*). The Palacioses, on the other hand, argue that the statute requires only one inquiry—whether the report evidences a good-faith effort to provide a fair summary of the expert's opinions. According to the Palacioses, the trial court does not have to make any factual determinations because the only relevant information is in the report itself. We agree with the Palacioses that a trial court should look no further than the report in conducting a section 13.01(*l*) inquiry.

The issue for the trial court is whether "the report" represents a good-faith effort to comply with the statutory definition of an expert report. *Id.* § 13.01(*l*). That definition requires, as to each defendant, a fair summary of the expert's opinions about the applicable standard of care, the manner in which the care failed to meet that standard, and the causal relationship between that failure and the claimed injury. *Id.* § 13.01(r)(6). Because the statute focuses on what the report discusses, the only information relevant to the inquiry is within the four corners of the document.

■ Under subsections 13.01(*l*) and (r)(6), the expert report must represent only a good-faith effort to provide a fair summary of the expert's opinions. A report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute. *See Hart v. Wright,* 16

S.W.3d 872, 877 (Tex.App.—Fort Worth 2000, pet. denied). In setting out the expert's opinions on each of those elements, the report must provide enough information to fulfill two purposes if it is to constitute a good-faith effort. First, the report must inform the defendant of the specific conduct the plaintiff has called into question. Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit. *See* 4 S.W.3d at 865 (Taft, J. dissenting); *Wood v. Tice,* 988 S.W.2d 829, 830 (Tex.App.—San Antonio 1999, pet. denied) (noting that one of the purposes of article 4590i is to deter frivolous claims).

■■■ A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes. Nor can a report meet these purposes and thus constitute a good-faith effort if it omits any of the statutory requirements. *See, e.g., Hart,* 16 S.W.3d at 877 (holding that a report was inadequate because it stated that the patient had a heart attack and the doctor breached the standard of care, without describing the standard of care); *Wood,* 988 S.W.2d at 831–32 (holding that an expert report did not meet the statutory requirements because it did not name the defendants, state how the defendants breached the standard of care, demonstrate causation and damages, or include a curriculum vitae). However, to avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial. *See, e.g.,* Tex.R. Civ. P. 166(f) (setting out the requirements for the form and content of affidavits offered as summary-judgment

proof); Tex.R. Evid. 802 (stating that most hearsay is inadmissible).

■■■ American Transitional contends that Dr. Bontke's report does not meet the statutory requirements because it does not represent a good-faith effort to provide a fair summary of her opinion on the standard of care and how American Transitional breached that standard. The Palacioses respond that the following parts of Dr. Bontke's report establish these elements:

> Based on the available documentation I was able to conclude that: Mr. Palacios fell from his bed on 5/14/94 while trying to get out of it on his own. The nursing notes document that he was observed by nursing on the hour for two hours prior to the fall. In addition, ten minutes before the fall, the nursing notes documents [sic] the his wrist/vest restraints were on. Yet, at the time of his fall he was found on the floor with his vest/wrist restraints on but not tied to the bed. It is unclear how he could untie all four of the restraints from the bedframe in under ten minutes. Obviously, Mr. Palacios had a habit of trying to undo his restraints and precautions to prevent his fall were not properly utilized.
>
> . . . .
>
> All in all, Mr. Palacios sustained a second brain injury with a left subdural hematoma while he was an inpatient at [the Hospital]. . . . [I]n my opinion, the medical care rendered to Mr. Palacios at the time of his second brain injury was below the accepted and expected standard of care which he could expect to receive. Moreover, this [sic] below the accepted standard of care extends to both the cause of the second injury as well as the subsequent treatment. . . .

The Palacioses rely mostly on one sentence in the report to establish the standard of care: "Mr. Palacios had a habit of

trying to undo his restraints and precautions to prevent his fall were not properly utilized." They argue that the inference can be made from that sentence, along with the statement that "[i]t is unclear how he could untie all four of the restraints from the bed frame in under ten minutes," that Dr. Bontke believes American Transitional's staff should have tied the restraints to the bed more securely.

■ The standard of care for a hospital is what an ordinarily prudent hospital would do under the same or similar circumstances. *See Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 366 (Tex. 1987). Identifying the standard of care is critical: Whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently. "While a 'fair summary' is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given." 4 S.W.3d at 865 (Taft, J. dissenting). The statement the Palacioses rely upon— that precautions to prevent Palacios' fall were not properly used—is not a statement of a standard of care. Neither the trial court nor American Transitional would be able to determine from this conclusory statement if Dr. Bontke believes that the standard of care required American Transitional to have monitored Palacios more closely, restrained him more securely, or done something else entirely. "It is not sufficient for an expert to simply state that he or she knows the standard of care and concludes it was [or was not] met." *See Chopra v. Hawryluk*, 892 S.W.2d 229, 233 (Tex.App.—El Paso 1995, writ denied). Knowing only that the expert believes that American Transitional did not take precautions to prevent the fall might be useful if American Transitional had an absolute duty to prevent falls from

its hospital beds. But as a general rule, res ipsa loquitur does not apply in medical-malpractice cases. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 7.01 (limiting res ipsa loquitur in medical malpractice to the limited classes of cases to which it applied as of August 29, 1977); *Haddock v. Arnspiger*, 793 S.W.2d 948, 951 (Tex.1990).

When the expert report's conclusory statements do not put the defendant or the trial court on notice of the conduct complained of, section 13.01(*l*) affords the trial court no discretion but to conclude, as the trial court did here, that the report does not represent a good-faith effort to provide a fair summary of the standard of care and how it was breached, as section 13.01(r)(6) requires. And because the statutory 180 day time period had passed when the trial court here made that determination, section 13.01(e) required the court to dismiss with prejudice the Palacioses' claims against American Transitional. *See* Tex. Rev.Civ. Stat. Ann. art. 4590i, § 13.01(e). Accordingly, we reverse the court of appeals' judgment and dismiss with prejudice the Palacioses' claims.