Heidi C. HORSLEY–LAYMAN
and Jeremy Roy Layman,
Appellants,

v.

Fernando S.M. ANGELES,
M.D., Appellee.

No. 2–00–155–CV.

Court of Appeals of Texas,
Fort Worth.

Oct. 31, 2002.

Harding, Bass, Fargason, Booth & St. Clair, L.L.P., and Ray Fargason, Lubbock, for Appellants.

Shaw & Associates, P.C., and Diane K. Shaw, Dallas, for Appellee.

Panel A: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

## OPINION

JOHN CAYCE, Chief Justice.

### Introduction

Appellants Heidi C. Horsley–Layman and Jeremy Roy Layman appeal from the trial court's dismissal of their medical malpractice lawsuit due to their failure to provide expert reports that meet the requirements of article 4590i, section 13.01(d) of the Medical Liability and Insurance Improvement Act. Because the trial court abused its discretion in dismissing appellants' suit, we will reverse and remand.

### Factual and Procedural Background

On February 16, 1996, appellants sued Dr. Fernando Angeles and several co-defendants alleging medical negligence in the care and treatment of Heidi, including performance of an unnecessary gallbladder surgery. On June 20, 1996, appellants provided the reports of Drs. Donald E. Mansell and Michael W. Stavinoha pursuant to article 4590i, section 13.01(d) of the Medical Liability and Insurance Improvement Act (the Act).[1] The reports criticized one of Dr. Angeles's co-defendants, but they did not mention Dr. Angeles. Accordingly, Dr. Angeles moved to dismiss appellants' suit against him asserting that they had not complied with the requirements of section 13.01(d) by timely filing an expert report that provided a fair summary of the expert's opinions regarding applicable standards of care, the manner in which the care rendered failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.[2]

On October 21, 1996, in response to Dr. Angeles's motion, appellants requested an extension of time to file the report pertaining to Dr. Angeles more than 180 days after suit was filed.[3] In conjunction with this request, appellants introduced a second report by Dr. Stavinoha dated October 15, 1996, containing allegations against Dr. Angeles. Appellants also contended that the previously filed reports of Dr. Mansell and Dr. Stavinoha were "impliedly critical" of Dr. Angeles, and, thus, substantially complied with the statutory requirements of section 13.01(r)(6).

---

1. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d) (Vernon Supp.2002). When a medical malpractice suit is filed, the plaintiff must file an expert report as to each defendant within 180 days. *Id.*

2. *See id.* § 13.01(r)(6).

3. *See id.* § 13.01(g) ("if a claimant has failed to comply with [the 180 day deadline] and ... the court finds that the failure ... was not intentional or the result of conscious indifference ... the court shall grant a grace period of 30 days to permit the claimant to comply").

The trial court denied appellants' motion for extension.[4] The trial court also severed appellants' suit against Dr. Angeles from the main suit, and dismissed the case against Dr. Angeles.

On appeal, the case was transferred to the Texarkana Court of Appeals by order of the Supreme Court of Texas pursuant to its docket equalization policy.[5] The Texarkana court reversed the dismissal order and remanded the case to the trial court, holding that the trial court abused its discretion by refusing to grant appellants an extension of time to file their report.[6]

On remand of the case to the trial court, Dr. Angeles again moved to dismiss the suit reurging the grounds in the first motion to dismiss, that appellants had failed to comply with section 13.01(d) by failing to provide an adequate expert report. In response, appellants filed the report of John D. Buxton, M.D., which was specifically critical of Dr. Angeles. Dr. Angeles then filed a motion to disqualify Dr. Buxton as an expert witness and to strike his report as "non-qualifying" because it failed to state specific acts of negligence, or establish any causal relationship between the negligence and the injury, harm, or damages claimed by appellants. On December 27, 1999, the trial court ordered that Dr. Angeles's motion was granted, that the affidavit of Dr. Buxton was stricken in its entirety, and that appellants' cause of action was dismissed.

## Standard of Review

■ Dismissal of a cause of action under article 4590i, section 13.01(e) is treated as a sanction and is reviewed under an abuse of discretion standard.[7] An abuse of discretion occurs when a trial court clearly acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding principles.[8] Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.[9]

## Dr. Buxton's Expert Report

In their second issue, appellants contend that the trial court abused its discretion in striking Dr. Buxton's expert report and dismissing the case, because Dr. Buxton's report constitutes a good faith effort to satisfy subsections 13.01(*l*) and (r)(6). As a general surgeon, Dr. Buxton is qualified to identify the standard of care applicable to Dr. Angeles.[10]

Dr. Buxton's detailed, three-page report includes the following statements:

**4.** *See id.* § 13.01(e)(3). Section 13.01(e)(3) provides for "dismissal of the action of the claimant against that defendant with prejudice" if a claimant has failed to furnish an expert report within 180 days after the date in which the suit is filed. *Id.*

**5.** *See* Tex. Sup.Ct., *Transfer of Cases From Court of Appeals*, Misc. Docket No. 97–9098 (June 30, 1997).

**6.** *See Horsley–Layman v. Angeles,* 968 S.W.2d 533, 536–37 (Tex.App.-Texarkana 1998, no pet.).

**7.** *See Am. Transitional Care Ctrs. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001); *Wright v. Bowie Mem'l Hosp.,* 48 S.W.3d 443, 446 (Tex.

App.-Fort Worth 2001), *rev'd,* 79 S.W.3d 48 (Tex.2002); *Hart v. Wright,* 16 S.W.3d 872, 875 (Tex.App.-Fort Worth 2000, pet. denied).

**8.** *See Garcia v. Martinez,* 988 S.W.2d 219, 222 (Tex.1999); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

**9.** *Downer,* 701 S.W.2d at 241–42.

**10.** Tex.Rev.Civ. Stat. Ann. art. 4590i, §§ 13.01(r)(5)(A), 14.01(a)(1)–(3).

Dr. Angeles accepted the recommendation by Dr. Narayan to proceed with a laparoscopic cholecystectomy after a relatively brief history of symptoms that might have been due to other problems including non-specific GI symptoms, hiatal hernia, or possibly biliary disease. Her work-up had included a gallbladder ultrasound that was negative, liver function tests which were reportedly normal and the ERCP which found normal anatomy and suggested no bile crystals. . . .

. . . .

The gallbladder appears to be normal gallbladder by pathology report. Mild cholecystitis is probably present in virtually all normal gallbladders. No scarring about the gallbladder is reported. No description of the cystic duct is included and it is apparent that the bile is thin and contains no sludge or stones. What truly is amazing to me is that Dr. Angeles was aware of an abdominal wall bleeding problem as is evident by his note of extending the incision, to place the figure-of-eight sutures. This certainly should have concerned Dr. Angeles for the safety of his patient since she obviously had signs and symptoms of ongoing bleeding while he was "observing" her, presumably for complications. He was required to provide this patient with careful after surgery care, especially since he knew that he might have an abdominal wall arterial bleeder. . . . During and after surgery, Toradol was supplied as pain control management. Though this may be acceptable if no visible or troublesome bleeding were present, I believe that we have documentation of troublesome bleeding that would have a potential for serious problems, as has resulted with Heidi Horsley–Layman. Therefore, using Toradol in this case, is and was contraindicated by its manufacturer and is negligent. . . .

I believe the major complication was the amount of blood that was lost, since we see a pre-op hematocrit of 40 to a subsequent one of 22 some days later. It is obvious that she lost more than half of her blood volume into the abdominal wall, muscle layers and retroperitoneal space. This really is a catastrophic blood loss with shock being the most serious complication. Other problems of pressure trauma to the anatomy, severe pain, medication, all are complications that compound against each other.

The history and physical by Dr. Angeles is sketchy and lacks documentation of prior work-up that would be necessary for a patient with acalculus cholecystitis. Though Dr. Angeles may accept Dr. Narayan's recommendations for laparoscopic cholecystectomy, as a surgeon he should be able to document the tests that were done and the value of those tests in establishing a diagnosis. I believe that her symptoms were far too short and quite easily explained by other GI problems that were not addressed, to exclude them as sources of her symptoms. . . .

Thus, in addition to Dr. Angeles['s] negligent use of Toradol, he also performed a cholecystectomy, a major surgery, on Heidi Horsley–Layman; without any verified abnormality of her gallbladder, or any true emergency indication for a cholecystectomy. So, Dr. Angeles'[s] decision for surgery and performance and management of the after-care may be considered negligent and below the standard-of-care in several ways, as outlined above.

The issue for the trial court in reviewing Dr. Buxton's report is whether it represents a good faith effort to comply with the statutory definition of an expert report in section 13.01(r)(6) of the Act.[11] That defini-

11. *See id.* § 13.01(*l*); *Palacios,* 46 S.W.3d at 878.

tion requires a fair summary of Dr. Buxton's opinions about the applicable standard of care, the manner in which Dr. Angeles's care failed to meet that standard, and the causal relationship between that failure and the claimed injury.[12]

Under subsections 13.01(*l*) and (r)(6), the expert report must represent only a good faith effort to provide a fair summary of the expert's opinions on each of the elements identified in the statute.[13] In setting out the expert's opinions on each of those elements, the Supreme Court of Texas has held that the report must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question; and (2) it must provide a basis for the trial court to conclude that the claims have merit.[14] A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes.[15]

Dr. Buxton's report clearly represents a good faith effort to provide a fair summary of his opinions on each of the elements identified in section 13.01(r)(6). Both the trial court and Dr. Angeles are able to determine the following from the report:

- that Dr. Buxton believes that the standard of care governing Dr. Angeles required him not only to "document" and assess "the value" of the tests performed by Dr. Narayan in establishing a diagnosis, but to also evaluate and exclude other GI problems as sources of her symptoms prior to performing a cholecystectomy

based merely on Dr. Narayan's recommendations;

- that Dr. Buxton believes that, upon learning of Heidi's abdominal wall bleeding, the applicable standard of care required Dr. Angeles to provide Heidi with after-surgery care, which included examining her after her call "for help";
- that Dr. Buxton believes Dr. Angeles's failure to properly document and assess the value of the tests performed by Dr. Narayan, failure to evaluate and exclude other GI problems as sources of Heidi's symptoms, and failure to examine Heidi after she called "for help" was "negligent and below the standard-of-care"; and,
- that Dr. Buxton believes Dr. Angeles's breaches of the applicable standards of care caused the unnecessary removal of Heidi's normal gallbladder and her "catastrophic blood loss with shock being the most serious complication."

We believe this is more than enough information to inform Dr. Angeles of the specific conduct appellants have called into question and to provide a basis for the trial court to conclude that appellants' claims have merit. The report, therefore, constitutes a good faith effort to fulfill the two purposes of the statute identified by the supreme court in *Palacios* and reaffirmed in *Bowie Memorial Hospital v. Wright.*[16]

We have carefully reviewed the supreme court's opinions in *Palacios* and *Wright,* and, while both cases are distinguishable from this case on the facts, we are confident both opinions support the result

**12.** *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(r)(6); *Palacios,* 46 S.W.3d at 878.

**13.** *Palacios,* 46 S.W.3d at 878; *see Hart,* 16 S.W.3d at 877.

**14.** *Palacios,* 46 S.W.3d at 879.

**15.** *Id.*

**16.** 79 S.W.3d 48 (Tex.2002).

reached here. In *Palacios,* Teofilo Palacios had suffered brain damage from an accident that occurred on his job. While hospitalized, he fell from his bed and his family claimed that the fall caused him to sustain further brain injury.[17] To establish the applicable standard of care, the Palacioses relied on one sentence in their expert report stating that, "Mr. Palacios had a habit of trying to undo his restraints and precautions to prevent his fall were not properly utilized."[18] The Palacioses argued that from this statement the inference could be made that the standard of care required the hospital to have monitored Palacios more closely, restrained him more securely, or done something else entirely.[19] The supreme court held the statement the Palacioses relied upon was not a good faith effort to provide a fair summary of the applicable standard of care.[20]

In *Wright,* Barbara Wright suffered fractures in her right knee and foot in a car accident but the Bowie Memorial Hospital physician's assistant that took the x-rays misplaced or misread the foot x-ray and, therefore, did not discover the fracture in the right foot.[21] The fracture was discovered a month later and Barbara had two surgeries over ten months.[22] The Wrights complained that if the physician's assistant had diagnosed Barbara's fractured foot earlier she "probably would have had a better outcome."[23] To establish a causal relationship between Bowie's breach of the standard of care and Barbara's injury, the Wright's relied on one

statement in their expert report: "if the x-rays would have been correctly read and the appropriate medical personnel acted upon those findings then [Barbara] would have had the possibility of a better outcome."[24] The Wrights contended that this statement "explains why [Barbara's] damages were caused by Bowie Hospital's breach."[25]

The supreme court held that the report's conclusory statement that Barbara might have had "the possibility of a better outcome" did not constitute a good faith effort to comply with the statute's causation requirement because it did not provide information linking the expert's conclusion that Barbara might have had a better outcome to Bowie's failure to correctly read and act upon the x-rays, i.e., the report failed to explain how Bowie's conduct caused further injury to Barbara.[26] "A conclusory report does not meet the Act's requirements, because it does not satisfy the *Palacios* test."[27]

Unlike the reports in *Palacios* and *Wright,* Dr. Buxton's report is not conclusory and does not require us to infer what Dr. Buxton believes to be the applicable standard of care, the manner in which Dr. Angeles's care failed to meet that standard, or the causal relationship between that failure and Heidi's injury; all of this information is expressly contained within the report's four corners.[28] And, in contrast to the report in *Wright,* Dr. Buxton's

17. *Palacios,* 46 S.W.3d at 875–76.

18. *Id.* at 879–80.

19. *Id.* at 880.

20. *Id.*

21. 79 S.W.3d at 50.

22. *Id.*

23. *Id.* at 51.

24. *Id.* at 52–53.

25. *Id.* at 53.

26. *Id.*

27. *Id.*

28. *See Palacios,* 46 S.W.3d at 878.

report does much more than merely provide "insight" about Heidi's claims.[29] Rather, it more than fulfills *Palacios*'s two-part test by providing enough information to inform Dr. Angeles of the specific conduct called into question and to provide the trial court a basis to conclude that appellants' claims have merit.

Accordingly, we hold the trial court had no discretion but to conclude that the report represented a good faith effort to provide a fair summary of the standard of care applicable to Dr. Angeles, how it was breached, and the causal relationship between the breach and Heidi's injury, as section 13.01(r)(6) requires.[30] Consequently, the trial court abused its discretion in dismissing the case. We, therefore, sustain issue two, reverse the judgment of the trial court, and remand the case for further proceedings.[31]

---

**29.** *See Wright,* 79 S.W.3d at 52.

**30.** *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(*l*) (authorizing a trial court to grant a challenge to the adequacy of a timely filed expert report *"only* if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in Subsection (r)(6) of this section") (emphasis supplied).

**31.** Because we hold Dr. Buxton's report complies with section 13.01(r)(6), we need not reach the question raised in issue one of whether the other expert reports filed by appellants complied with the statute.