COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-083-CV
 
 
ANGELA 
PETRUS-BRADSHAW                                                APPELLANT
 
V.
 
JOHN 
FRANK DULEMBA, M.D.                                                  APPELLEE
 
 
------------
 
FROM 
THE 158TH DISTRICT COURT OF DENTON COUNTY
 
------------
 
OPINION
 
------------
        Angela 
Petrus-Bradshaw appeals from the trial court’s order dismissing her medical 
malpractice suit against John Frank Dulemba, M.D. for failure to file an 
adequate expert pursuant to section 13.01 of former article 4590i, the Medical 
Liability and Insurance Improvement Act.[1]  In 
three points, Petrus-Bradshaw contends that the trial court improperly dismissed 
her suit because her original expert report was adequate and she timely filed an 
amended expert report, and that the trial court improperly awarded Dr. Dulemba 
costs against her because no evidence was submitted to support the award.  
Because we hold that Petrus-Bradshaw’s original expert report was adequate, we 
will reverse the trial court’s dismissal order and remand the case for further 
proceedings.
        On 
February 12, 2003, Petrus-Bradshaw sued Dr. Dulemba for alleged medical 
negligence in his care and treatment of her, including the performance of a 
hysterectomy.  On August 5, 2003, Petrus-Bradshaw filed the report of Dave 
E. David, M.D. pursuant to former article 4590i, section 13.01.[2]  
Dr. Dulemba moved to dismiss Petrus-Bradshaw’s claims, contending that she had 
not complied with the requirements of former section 13.01(r)(6).[3]  Dr. Dulemba asserted that Dr. David’s report 
failed to identify what the standard of care was for Dr. Dulemba’s care and 
treatment of Petrus-Bradshaw or to establish breach or any causal relationship 
between the alleged negligence and Petrus-Bradshaw’s injuries.  After a 
hearing, the trial court “reluctantly” granted Dr. Dulemba’s motion and 
dismissed Petrus-Bradshaw’s claims with prejudice.[4]  
This appeal followed.
        In 
her third point, Petrus-Bradshaw complains that the trial court erred in 
determining that Dr. David’s August 2003 expert report was inadequate.  
The issue for the trial court in reviewing Dr. David's report was whether it 
represented a good faith effort to comply with the statutory definition of an 
expert report in former section 13.01(r)(6).  See Am. Transitional Care 
Ctrs. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001); Horsley-Layman v. 
Angeles, 90 S.W.3d 926, 929 (Tex. App.—Fort Worth 2002, pet. 
denied).  That definition requires a fair summary of Dr. David’s opinions 
about the applicable standard of care, the manner in which the care failed to 
meet that standard, and the causal relationship between that failure and the 
claimed injury.  Palacios, 46 S.W.3d at 878; Horsley-Layman, 
90 S.W.3d at 929-30.
        Under 
former subsections 13.01(l) and (r)(6),[5] the 
expert report must represent only a good faith effort to provide a fair summary 
of the expert's opinions on each of the statutory elements.  See 
Palacios, 46 S.W.3d at 878; Horsley-Layman, 90 S.W.3d at 930.  
In setting out the expert's opinions on each of those elements, the report must 
provide enough information to fulfill two purposes: (1) it must inform the 
defendant of the specific conduct the plaintiff has called into question; and 
(2) it must provide a basis for the trial court to conclude that the claims have 
merit.  See Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 
2002); Palacios, 46 S.W.3d at 879; Horsley-Layman, 90 S.W.3d at 
930.  Identifying the standard of care is critical; whether a defendant 
breached his or her duty to a patient cannot be determined absent specific 
information about what the defendant should have done differently.  Palacios, 
46 S.W.3d at 880; Russ v. Titus Hosp. Dist., 128 S.W.3d 332, 344 (Tex. 
App.—Texarkana 2004, pet. denied).
        Further, 
although a report need not marshal all of the plaintiff’s proof, one that 
merely states the expert's conclusions about the standard of care, breach, and 
causation does not fulfill these two purposes.  See Palacios, 46 
S.W.3d at 878-79; Horsley-Layman, 90 S.W.3d at 930.  Rather, the 
expert must explain the basis of his statements to link his conclusions to the 
facts.  Bowie Mem’l Hosp., 79 S.W.3d at 52.  Only information 
contained within the four corners of the expert report itself is relevant to 
whether the expert report is adequate.  Palacios, 46 S.W.3d at 878.
        A 
trial court’s dismissal of a cause of action under former article 4590i, 
section 13.01 is treated as a sanction and is reviewed under an abuse of 
discretion standard.  See id. at 877; Horsley-Layman, 90 
S.W.3d at 928.  An abuse of discretion occurs when a trial court acts in an 
arbitrary or unreasonable manner or when it acts without reference to any 
guiding principles.  Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 
1999); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 
1985), cert. denied, 476 U.S. 1159 (1986).  Merely because a trial 
court may decide a matter within its discretion in a different manner than an 
appellate court would in a similar circumstance does not demonstrate that an 
abuse of discretion has occurred.  Downer, 701 S.W.2d at 241-42.
        In 
this case, Dr. David’s detailed August 2003 report includes the following 
statements:
   
Ms. Bradshaw was 24 years old on February 14, 2001 at which time she underwent a 
laparoscopic assisted vaginal hysterectomy along with bilatral 
salpingo-oophorectomy, appendectomy and lysis adhesions for pelvic pain, 
dysmennorrhea, severe adhesions and endometriosis.  At the time of the 
surgery she was found to have adhesions from the adnexal areas to the pelvic 
sidewalls, as well as peri-appendiceal adhesions.  There were also a large 
number of adhesions seen in the culdesac and endometriosis was supposedly seen 
on the bladder.  The pathology report on the submitted structures, however, 
showed total benignity except for a slight reactive process of the 
ovaries.  It should be noted that no endometriosis was found.  At the 
time of the surgery the left ureter was lacerated and this laceration went 
undetected.  On February 16, 2001 she was discharged from the 
hospital.  On February 20th, her pain worsened . . . and she was taken to 
the Emergency Room via ambulance . . . . Dr. Dulemba was paged but did not 
perform an examination on the patient.  The following day she was examined 
by a general surgeon . . . and . . . a CT scan was performed and a lacerated 
ureter was found, for which she was taken to the operating room.  On that 
day she underwent placement of a ureteral stent.
  
In 
light of the aforementioned information, it is my medical opinion . . . that Dr. 
John Frank Dulemba deviated from (and fell below) the standard of care in his 
care and treatment of Angela Bradshaw by:
  
•Performing 
a hysterectomy on such a young woman unnecessarily, as she indeed had no 
endometriosis whatsoever, and pelvic pain should first be worked up and treated 
in a non-surgical fashion.

                . 
. . .
 
•Performing 
a more major surgery than a simple lysis of adhesions. A hysterectomy was not 
necessary in order to rid this patient of her pain, as there was no uterine 
pathology present and there was no evidence that that was the source of her 
pain.
 
•Even 
if a hysterectomy were to have been necessary and endometriosis and adhesions 
were suspected, then the procedure should have been performed abdominally, 
rather than vaginally.  Performing such surgeries by the 
laparoscopic/vaginal route is a tragedy waiting to happen, as a good part of the 
procedure is performed blindly.
  
It 
is further my medical opinion, that, to a reasonable degree of medical 
certainty, these deviations were a direct and proximate cause of the lacerated 
ureter experienced by Ms. Bradshaw and the morbidity and sequalae which followed 
the mishap.  This morbidity included the needed for additional surgery.
 
        Dr. 
David’s report clearly represents a good faith effort to provide a fair 
summary of his opinions on each of the elements identified in former section 
13.01(r)(6).  Both the trial court and Dr. Dulemba are able to determine 
the following from the report:
  
•Dr. David believes that the standard of care requires that pelvic pain such 
as Petrus-Bradshaw was suffering should first be “worked up” and treated 
without surgery.
  
•Dr. 
David believes that the standard of care requires that a complete hysterectomy 
should not be performed on a twenty-four-year-old woman with pelvic pain who has 
no endometreosis and no evidence of uterine pathology; instead, a less drastic 
surgery such as a simple lysis of adhesions should be performed.
 
•Even 
if a hysterectomy is required, Dr. David believes that the standard of care 
requires that the procedure should be performed abdominally rather than 
vaginally because a hysterectomy performed by the laparoscopic/vaginal route is 
done “blindly” and is a “tragedy waiting to happen.”
  
•Dr. 
David believes that Dr. Dulemba’s performance of a complete 
laparoscopic-assisted vaginal hysterectomy on Petrus-Bradshaw fell below the 
standard of care, in light of her youth, her lack of endometreosis or uterine 
pathology, and the risk of “tragedy” involved.
  
•Dr. 
David believes that Dr. Dulemba’s performance of the hysterectomy by the 
surgical method used was a direct and proximate cause of Petrus-Bradshaw’s 
lacerated ureter, the resulting “morbidity and sequalae,” and the need for 
additional surgery.
 
 
        This 
is ample information to inform Dr. Dulemba of the specific conduct that 
Petrus-Bradshaw has called into question and to provide the trial court a basis 
to conclude that Petrus-Bradshaw’s claims have merit.  See Palacios, 
46 S.W.3d at 879.  The report contains specific information about what Dr. 
David believes Dr. Dulemba should have done differently, and Dr. David links his 
conclusions to the facts.  See Bowie Mem’l Hosp., 79 S.W.3d at 52; 
Palacios, 46 S.W.3d at 880.
        Former 
section 13.01(l) authorizes a trial court to grant a challenge to the 
adequacy of a timely filed[6] expert report “only 
if it appears to the court, after hearing, that the report does not represent a 
good faith effort to comply with the definition of an expert report in [former 
section 13.01(r)(6)].”[7]   Accordingly, 
we hold that the trial court had no discretion but to conclude that Dr. 
David’s report represented a good faith effort to provide a fair summary of 
the standard of care applicable to Dr. Dulemba, how that standard was breached, 
and the causal relationship between the breach and Petrus-Bradshaw’s injuries, 
as former section 13.01(r)(6) requires.  See Russ, 128 S.W.3d at 
344.  Consequently, the trial court abused its discretion by dismissing the 
case.  We sustain Petrus-Bradshaw’s third issue.[8]
        In 
her second point, Petrus-Bradshaw contends that the trial court erred by 
ordering her to pay Dr. Dulemba’s costs and expenses.  Former article 
4590i, section 13.01(e) provides that, if the plaintiff in a medical negligence 
case fails to timely file an expert report, the court shall, upon the 
defendant’s motion, enter an order assessing the defendant’s reasonable 
attorney’s fees and court costs as sanctions against the plaintiff.[9]  Because we have held that Dr. David’s August 2003 
expert report is sufficient to meet the requirements of an expert report under 
former article 4590i, section 13.01(r)(6), we further hold that the trial court 
erred by awarding Dr. Dulemba costs as sanctions against Petrus-Bradshaw.  
We sustain Petrus-Bradshaw’s second point.
        Having 
sustained Petrus-Bradshaw’s second and third points, we reverse the trial 
court’s order dismissing with prejudice Petrus-Bradshaw’s claims against Dr. 
Dulemba and remand the case to the trial court for further proceedings.  See 
Tex. R. App. P. 43.2(d).
 
 
                                                                  JOHN 
CAYCE
                                                                  CHIEF 
JUSTICE
 
 
PANEL 
A:   CAYCE, C.J.; HOLMAN and WALKER, JJ.
 
DELIVERED: 
February 10, 2005


NOTES
1.  
Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985-87 (recodified 
2003) (current version at Tex. Civ. Prac. 
& Rem. Code Ann. § 74.351 (Vernon Supp. 2004-05)).
2.  
Dr. David’s report was actually dated July 28, 2003, but because of the filing 
date, we refer to it as the August 2003 report.
3.  
Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(r)(6), 1995 Tex. 
Gen. Laws 985, 987 (recodified 2003) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 
74.351(r)(6) (Vernon Supp. 2004-05)).
4.  
Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(b), (l), 
1995 Tex. Gen. Laws 985, 986-87 (recodified 2003) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 
74.351(b), (l)).
5.  
Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(l), 
(r)(6), 1995 Tex. Gen. Laws 985, 987 (recodified 2003) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 
74.351(l), (r)(6)).
6.  
The timeliness of Dr. David’s August 2003 report is not an issue in this 
appeal.
7.  
Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(l), 1995 
Tex. Gen. Laws 985, 987 (emphasis supplied) (recodified 2003) (current version 
at Tex. Civ. Prac. & Rem. Code Ann. 
§ 74.351(l) (Vernon Supp. 2004-05)).
8.  
In light of this holding, we need not address Petrus-Bradshaw’s first issue, 
in which she contends that the trial court also should have considered her 
amended report filed on the date of the hearing.
9.  
Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(e), 1995 Tex. 
Gen. Laws 985, 986 (recodified 2003) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 
74.351(b) (Vernon Supp. 2004-05)).