Petrus-Bradshaw v. Dulemba

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-083-CV

ANGELA PETRUS-BRADSHAW APPELLANT

V.

JOHN FRANK DULEMBA, M.D. APPELLEE

------------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

Angela Petrus-Bradshaw appeals from the trial court’s order dismissing her medical malpractice suit against John Frank Dulemba, M.D. for failure to file an adequate expert pursuant to section 13.01 of former article 4590i, the Medical Liability and Insurance Improvement Act.
(footnote: 1)  In three points, Petrus-Bradshaw contends that the trial court improperly dismissed her suit because her original expert report was adequate and she timely filed an amended expert report, and that the trial court improperly awarded Dr. Dulemba costs against her because no evidence was submitted to support the award.  Because we hold that Petrus-Bradshaw’s original expert report was adequate, we will reverse the trial court’s dismissal order and remand the case for further proceedings.

On February 12, 2003, Petrus-Bradshaw sued Dr. Dulemba for alleged medical negligence in his care and treatment of her, including the performance of a hysterectomy.  On August 5, 2003, Petrus-Bradshaw filed the report of Dave E. David, M.D. pursuant to former article 4590i, section 13.01.
(footnote: 2)  Dr. Dulemba moved to dismiss Petrus-Bradshaw’s claims, contending that she had not complied with the requirements of former section 13.01(r)(6).
(footnote: 3)  Dr. Dulemba asserted that Dr. David’s report failed to identify what the standard of care was for Dr. Dulemba’s care and treatment of Petrus-Bradshaw or to establish breach or any causal relationship between the alleged negligence and Petrus-Bradshaw’s injuries.  After a hearing, the trial court “reluctantly” granted Dr. Dulemba’s motion and dismissed Petrus-Bradshaw’s claims with prejudice.
(footnote: 4)  This appeal followed.

In her third point, Petrus-Bradshaw complains that the trial court erred in determining that Dr. David’s August 2003 expert report was inadequate.  The issue for the trial court in reviewing Dr. David's report was whether it represented a good faith effort to comply with the statutory definition of an expert report in former section 13.01(r)(6).  
See Am. Transitional Care Ctrs. v. Palacios,
 46 S.W.3d 873, 878 (Tex. 2001); 
Horsley-Layman v. Angeles,
 90 S.W.3d 926, 929 (Tex. App.—Fort Worth 2002, pet. denied).  That definition requires a fair summary of Dr. David’s opinions about the applicable standard of care, the manner in which the care failed to meet that standard, and the causal relationship between that failure and the claimed injury.  
Palacios,
 46 S.W.3d at 878; 
Horsley-Layman,
 90 S.W.3d at 929-30.

Under former subsections 13.01(
l
) and (r)(6),
(footnote: 5) the expert report must represent only a good faith effort to provide a fair summary of the expert's opinions on each of the statutory elements.  
See Palacios,
 46 S.W.3d at 878; 
Horsley-Layman,
 90 S.W.3d at 930.  In setting out the expert's opinions on each of those elements, the report must provide enough information to fulfill two purposes:  (1) it must inform the defendant of the specific conduct the plaintiff has called into question; and (2) it must provide a basis for the trial court to conclude that the claims have merit.  
See Bowie Mem’l Hosp. v. Wright,
 79 S.W.3d 48, 52 (Tex. 2002)
; Palacios,
 46 S.W.3d at 879; 
Horsley-Layman,
 90 S.W.3d at 930.  Identifying the standard of care is critical; whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently.  
Palacios,
 46 S.W.3d at 880; 
Russ v. Titus Hosp. Dist.,
 128 S.W.3d 332, 344 (Tex. App.—Texarkana 2004, pet. denied).

Further, although a report need not marshal all of the plaintiff’s proof, one that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes.  
See Palacios,
 46 S.W.3d at 878-79; 
Horsley-Layman,
 90 S.W.3d at 930.  Rather, the expert must explain the basis of his statements to link his conclusions to the facts.  
Bowie Mem’l Hosp.,
 79 S.W.3d at 52.  Only information contained within the four corners of the expert report itself is relevant to whether the expert report is adequate.  
Palacios,
 46 S.W.3d at 878.

A trial court’s dismissal of a cause of action under former article 4590i, section 13.01 is treated as a sanction and is reviewed under an abuse of discretion standard.  
See id. 
at 877; 
Horsley-Layman,
 90 S.W.3d at 928.  An abuse of discretion occurs when a trial court acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding principles.  
Garcia v. Martinez,
 988 S.W.2d 219, 222 (Tex. 1999); 
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Downer
, 701 S.W.2d at 241-42.

In this case, Dr. David’s detailed August 2003 report includes the following statements:

Ms. Bradshaw was 24 years old on February 14, 2001 at which time she underwent a laparoscopic assisted vaginal hysterectomy along with bilatral salpingo-oophorectomy, appendectomy and lysis adhesions for pelvic pain, dysmennorrhea, severe adhesions and endometriosis.  At the time of the surgery she was found to have adhesions from the adnexal areas to the pelvic sidewalls, as well as peri-appendiceal adhesions.  There were also a large number of adhesions seen in the culdesac and endometriosis was supposedly seen on the bladder.  The pathology report on the submitted structures, however, showed total benignity except for a slight reactive process of the ovaries.  It should be noted that no endometriosis was found.  At the time of the surgery the left ureter was lacerated and this laceration went undetected.  On February 16, 2001 she was discharged from the hospital.  On February 20th, her pain worsened . . . and she was taken to the Emergency Room via ambulance . . . .  Dr. Dulemba was paged but did not perform an examination on the patient.  The following day she was examined by a general surgeon . . . and . . . a CT scan was performed and a lacerated ureter was found, for which she was taken to the operating room.  On that day she underwent placement of a ureteral stent.

In light of the aforementioned information, it is my medical opinion . . . that Dr. John Frank Dulemba deviated from (and fell below) the standard of care in his care and treatment of Angela Bradshaw by:

•Performing a hysterectomy on such a young woman unnecessarily, as she indeed had no endometriosis whatsoever, and pelvic pain should first be worked up and treated in a non-surgical fashion.

. . . .

•Performing a more major surgery than a simple lysis of adhesions.  A hysterectomy was not necessary in order to rid this patient of her pain, as there was no uterine pathology present and there was no evidence that that was the source of her pain.

•Even if a hysterectomy were to have been necessary and endometriosis and adhesions were suspected, then the procedure should have been performed abdominally, rather than vaginally.  Performing such surgeries by the laparoscopic/vaginal route is a tragedy waiting to happen, as a good part of the procedure is performed blindly.

It is further my medical opinion, that, to a reasonable degree of medical certainty, these deviations were a direct and proximate cause of the lacerated ureter experienced by Ms. Bradshaw and the morbidity and sequalae which followed the mishap.  This morbidity included the needed for additional surgery. 

Dr. David’s report clearly represents a good faith effort to provide a fair summary of his opinions on each of the elements identified in former section 13.01(r)(6).  Both the trial court and Dr. Dulemba are able to determine the following from the report:

•Dr. David believes that the standard of care requires that pelvic pain such as Petrus-Bradshaw was suffering should first be “worked up” and treated without surgery.

•Dr. David believes that the standard of care requires that a complete hysterectomy should not be performed on a twenty-four-year-old woman with pelvic pain who has no endometreosis and no evidence of uterine pathology; instead, a less drastic surgery such as a simple lysis of adhesions should be performed.

•Even if a hysterectomy is required, Dr. David believes that the standard of care requires that the procedure should be performed abdominally rather than vaginally because a hysterectomy performed by the laparoscopic/vaginal route is done “blindly” and is a “tragedy waiting to happen.”

•Dr. David believes that Dr. Dulemba’s performance of a complete laparoscopic-assisted vaginal hysterectomy on Petrus-Bradshaw fell below the standard of care, in light of her youth, her lack of endometreosis or uterine pathology, and the risk of “tragedy” involved.

•Dr. David believes that Dr. Dulemba’s performance of the hysterectomy by the surgical method used was a direct and proximate cause of Petrus-Bradshaw’s lacerated ureter, the resulting “morbidity and sequalae,”  and the need for additional surgery.

This is ample information to inform Dr. Dulemba of the specific conduct that Petrus-Bradshaw has called into question and to provide the trial court a basis to conclude that Petrus-Bradshaw’s claims have merit.  
See Palacios,
 46 S.W.3d at 879.  The report contains specific information about what Dr. David believes Dr. Dulemba should have done differently, and Dr. David links his conclusions to the facts. 
See Bowie Mem’l Hosp.,
 79 S.W.3d at 52; 
Palacios,
 46 S.W.3d at 880.

Former section 13.01(
l
) authorizes a trial court to grant a challenge to the adequacy of a timely filed
(footnote: 6) expert report “
only
 if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in [former section 13.01(r)(6)].”
(footnote: 7)  Accordingly, we hold that the trial court had no discretion but to conclude that Dr. David’s report represented a good faith effort to provide a fair summary of the standard of care applicable to Dr. Dulemba, how that standard was breached, and the causal relationship between the breach and Petrus-Bradshaw’s injuries, as former section 13.01(r)(6) requires.  
See Russ,
 128 S.W.3d at 344.Consequently, the trial court abused its discretion by dismissing the case.  We sustain Petrus-Bradshaw’s third issue.
(footnote: 8)
 In her second point, Petrus-Bradshaw contends that the trial court erred by ordering her to pay Dr. Dulemba’s costs and expenses.  Former article 4590i, section 13.01(e) provides that, if the plaintiff in a medical negligence case fails to timely file an expert report, the court shall, upon the defendant’s motion, enter an order assessing the defendant’s reasonable attorney’s fees and court costs as sanctions against the plaintiff.
(footnote: 9)  Because we have held that Dr. David’s August 2003 expert report is sufficient to meet the requirements of an expert report under former article 4590i, section 13.01(r)(6), we further hold that the trial court erred by awarding Dr. Dulemba costs as sanctions against Petrus-Bradshaw.  We sustain Petrus-Bradshaw’s second point.

Having sustained Petrus-Bradshaw’s second and third points, we reverse the trial court’s order dismissing with prejudice Petrus-Bradshaw’s claims against Dr. Dulemba and remand the case to the trial court for further proceedings.  
See
 
Tex. R. App. P.
 43.2(d).

JOHN CAYCE

CHIEF JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and WALKER, JJ.

DELIVERED: February 10, 2005

FOOTNOTES
1:
Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985-87 (recodified 2003) (current version at 
Tex. Civ. Prac. & Rem. Code Ann.
 § 74.351 (Vernon Supp. 2004-05)).

2:
Dr. David’s report was actually dated July 28, 2003, but because of the filing date, we refer to it as the August 2003 report.

3:
Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(r)(6), 1995 Tex. Gen. Laws 985, 987 (recodified 2003) (current version at 
Tex. Civ. Prac. & Rem. Code Ann.
 § 74.351(r)(6) (Vernon Supp. 2004-05)).

4:
Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(b), (
l
), 1995 Tex. Gen. Laws 985, 986-87 (recodified 2003) (current version at 
Tex. Civ. Prac. & Rem. Code Ann.
 § 74.351(b), (
l
)).

5:
Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(
l
), (r)(6), 1995 Tex. Gen. Laws 985, 987 (recodified 2003) (current version at 
Tex. Civ. Prac. & Rem. Code Ann.
 § 74.351(
l
), (r)(6)).

6:
The timeliness of Dr. David’s August 2003 report is not an issue in this appeal.

7:
Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(
l
), 1995 Tex. Gen. Laws 985, 987 (emphasis supplied) (recodified 2003) (current version at 
Tex. Civ. Prac. & Rem. Code Ann.
 § 74.351(
l
) (Vernon Supp. 2004-05)).

8:
In light of this holding, we need not address Petrus-Bradshaw’s first issue, in which she contends that the trial court also should have considered her amended report filed on the date of the hearing. 

9:
Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(e), 1995 Tex. Gen. Laws 985, 986 (recodified 2003) (current version at 
Tex. Civ. Prac. & Rem. Code Ann.
 § 74.351(b) (Vernon Supp. 2004-05)).