NO. 07-02-0441-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

NOVEMBER 7, 2003

_____

CARROL L. SUTTON, MARY ANN JOHNSON AND KATHY HAMMONDS,
INDIVIDUALLY AND AS THE HEIRS AND REPRESENTATIVES AND/OR
AS NEXT FRIEND OF A. T. SUTTON, DECEASED, APPELLANTS

V.

LAYNE COLLUMS, M.D. OF WILBARGER COUNTY, TEXAS, APPELLEE

_____

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 22,484; HONORABLE TOM NEELY, JUDGE

_____

Before QUINN and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Appellants Carrol L. Sutton, Mary Ann Johnson, and Kathy Hammonds, surviving

children and heirs of A.T. Sutton, deceased, challenge the trial court's order dismissing

their claims against Layne Collums, M.D. Presenting a sole issue, the heirs contend the trial court erred in granting Dr. Collums's motion to reconsider his motion to dismiss with prejudice for failure to comply with article 4590i, section13.01 of the Medical Liability and Insurance Improvement Act.[1] Based upon the rationale expressed herein, we affirm.

On the morning of November 25, 1998, Dr. Collums examined Sutton for loss of hearing and vertigo. Sutton was diagnosed with bilateral cerumen impaction in his ears and was treated by irrigation and removal of the cerumen. The following morning Sutton's symptoms worsened and he contacted Dr. Collums, who suggested he go to the emergency room. While at the emergency room, Sutton was examined by another physician and a CT scan and other tests were performed. Sutton was discharged with a diagnosis of labyrinthitis. That same evening, Sutton returned to the emergency room complaining of being weaker and having slurred speech. A second CT scan revealed a stroke to the left cerebral system and he was admitted to Wilbarger General Hospital. Two days later he was transferred to a hospital in Wichita Falls and on December 17, 1998, he died.

---

[1]Repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Sess. Law Serv., current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.001 - 74.507 (Vernon Pamph. Supp. 2004). All citations to the Act herein are to article 4590i of the Texas Revised Civil Practice and Remedies Code that was in effect at the time of the underlying suit.

By their lawsuit, the heirs contended the failure of Dr. Collums to diagnose and treat Sutton's stroke proximately caused his death. In his expert report in support of the heirs' case, Dr. Paul Carl Friedman agreed that cleaning Sutton's ears was one possible treatment for the symptoms initially presented. However, he also states that failure to diagnose and treat Sutton's stroke resulted in his death.

Doctor Collums filed a motion to reconsider his motion to dismiss the cause alleging the expert report did not satisfy the requirements of article 4590i of the Act. He challenged the report as inadequate for failing to address the appropriate standard of care for a general practitioner in treating a patient like Sutton. He also questioned the failure to include any tests or procedures that should have been performed by an ordinarily prudent general practitioner as well as the failure to indicate what diagnoses a general practitioner should have made based on tests and procedures. Based on Dr. Collums's motion, the trial court dismissed the suit.

By their sole issue, the heirs contend the trial court erred when it granted Dr. Collums's motion to dismiss pursuant to article 4590i, section 13.01. We disagree. A trial court's decision to dismiss a case pursuant to article 4590i, section 13.01 is reviewed under an abuse of discretion standard. American Transitional Care v. Palacios, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its discretion when it acts arbitrarily or unreasonably without reference to any guiding rules or principles. Walker v. Gutierrez,

3

111 S.W.3d 56, 62 (Tex. 2003), citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). The issue for the trial court is whether the report represents a good faith effort to comply with the statutory definition of an expert report. *Palacios*, 46 S.W.3d at 878. The report must contain a fair summary of the expert's opinion about the (1) applicable standard of care; (2) manner in which the care failed to meet that standard; and (3) causal relationship between that failure and the claimed injury. Article 4590i, § 1301(r)(6); *Palacios*, 46 S.W.3d at 878. The report must provide sufficient information to (1) inform the defendant of the specific conduct the plaintiff has called into question, and (2) a basis for the trial court to conclude the claims have merit. *Palacios*, 46 S.W.3d at 879.

The trial court should look no further than within the four corners of the report to determine whether it represents a good faith effort to comply with the definition of an expert report. *Id*. at 878. A plaintiff is not required to marshal all his proof, but must include the expert's opinion on each of the three elements required by the Act. *Id.* An expert report that merely states conclusions or omits any of the statutory requirements does not fulfill the purposes of an expert report. *Id*. at 879.

The heirs argue the trial court's dismissal was based on Bowie Memorial Hosp. v. Wright, 79 S.W.3d 48 (Tex. 2002), for failing to adequately allege causation and failing to connect the breach of the standard of care to the injury. They distinguish the reports in

4

*Bowie* and in *Palacios* and assert that Dr. Friedman expressed his opinion on causation in his report by stating that Dr. Collums's failure to diagnose a stroke and treat it with blood thinner medications resulted in Sutton's death.

In his report, Dr. Friedman provides in relevant part:

> It was a serious error and negligent to fail to ask the question 'why did not the treatment restore his hearing and balance?', then analyze the answer and act thereon. Had that been done, the appropriate diagnosis of "brain attack" or "stroke" would have been made, and appropriate treatment, i.e. administration of a blood thinner would have been initiated, limiting the effect of the stroke. . . . Mr. Sutton's decline and death was a result of that failure to diagnose and treat.
>
> The standard of care breached is: That which an ordinarily prudent health care provider (in this case, a general practitioner) would do under the same or similar circumstances. Such a physician would, under the circumstances, have made a proper diagnosis after further examination following the failure of the initial treatment (ear cleaning).

As required by *Palacios*, we must focus our analysis only on the information contained in the four corners of the report. Although it discusses what a general practitioner would do under the same or similar circumstances, it does not address the causal relationship between the alleged "serious error" in not questioning why Sutton's hearing and balance were not restored after his ears were cleaned and his death. Also, the report does not discuss any tests or procedures that should have been performed by an ordinarily prudent general practitioner on a patient with Sutton's symptoms. No connection is provided between Dr. Collums's failure to diagnose and treat stroke

5

symptoms and Dr. Friedman's conclusory statement that the alleged failure resulted in Sutton's death.  Based on the information provided in the report, we cannot conclude the trial court abused its discretion in dismissing the heirs' cause of action.  The heirs' sole issue is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice