Opinion issued June 9, 2005
     









In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00230-CV




JULIE BOSTON, MICHAEL BOSTON, CARY SIMS, AND JONI CRABB,
INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF DAVID
FRANKLIN BOSTON, JR., DECEASED, Appellants

V.

BAYLOR COLLEGE OF MEDICINE, KATHLEEN LISCUM, M.D.,
JAVIER VASQUEZ, M.D., AND ALLISON STENG-WILSON, M.D.,
Appellees




On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2002-50763




MEMORANDUM OPINION
          Appellants, Julie Boston, Michael Boston, Cary Sims, and Joni Crabb,
Individually and on Behalf of the Estate of David Franklin Boston, Jr., Deceased,
appeal the trial court’s dismissal of their lawsuit against appellees, Baylor College of
Medicine, Kathleen Liscum, M.D., Javier Vasquez, M.D., and Allison Steng-Wilson,
M.D., for failure to file an expert report that conformed to the requirements of former 
article 4590i of Texas Revised Civil Statutes.


 We affirm.
Background
          David Franklin Boston, Jr. (the “Decedent”) was admitted to Ben Taub
Hospital with acute abdominal pain and was diagnosed as having appendicitis and,
after a CT scan, a four-centimeter aortic aneurysm. The Decedent was treated for
approximately 10 days and was discharged and given an appointment for an
appendectomy to be performed four weeks later. The Decedent died two weeks after
his discharge, and an autopsy report listed the cause of death as peritonitis due to a
ruptured appendix and ruptured abdominal aortic aneurysm. 
          Appellants sued Baylor College of Medicine and 14 physicians for negligence
resulting in the Decedent’s death. In an effort to comply with section 13.01(d) of
article 4590i,


 appellants filed a medical expert report by David C. Folkers, M.D. 
Dr. Folkers stated his qualifications as a general surgeon and his familiarity with the
standards of care in treating patients with appendicitis. He then stated: 
At Ben Taub, Mr. Boston was admitted apparently to the Green
Surgery Team. From the records it is difficult to say which physicians
are primarily responsible for making medical and surgical
recommendations for Mr. Boston during his admission. Some of the
physicians were residents of the Baylor College of Medicine. From the
records the following physicians appear to have had some role in
diagnosing appendicitis and in the decision making process to discharge
Mr. Boston without having performed an appendectomy: 

                    Kathleen Liscum, M.D.;
                    Javier Vasquez, Jr., M.D.;
                    Allison Steng Wilson, M.D.;
                    Bharat Guthikonda, M.D.;
                    Alfred Watson, M.D.;
                    Francisco J. Arraiza, M.D.; 
                    Jay Bhama, M.D.;
                    Chase Conner, M.D.;
                    Mai Pham, M.D.; and
                    Thang Le, M.D. 
 
On 7/25/00, Mr. Boston had a CT of the abdomen, which among
other things revealed a 4-cm. abdominal aorta aneurysm.
 
On 8/4/00, Mr. Boston was discharged with a plan to perform
appendectomy in four weeks.
 
On 8/17/00, Mr. Boston died. Autopsy shows peritonitis due to
ruptured appendicitis and abdominal aortic aneurysm with rupture.
 
In my opinion, the peritonitis aggravated the pre-existing 4-cm.
aortic aneurysm and caused the rupture. The likelihood of the 4-cm.
aneurysm spontaneously rupturing is extremely unlikely. The peritonitis
caused by the ruptured appendix more likely than not resulted in the
rupture of the aneurysm. 
 
I am familiar with the standard of care for a surgeon deciding
whether to perform an appendectomy on a patient like Mr. Boston. With
symptoms of acute abdominal pain that Mr. Boston had on 7/25/00, and
the finding of an abdominal aortic aneurysm, surgery is immediately
indicated. The standard of care was to perform surgery to remove the
appendix and clear or drain any area of purulence from the ruptured
appendix. This is the standard of care so as to avoid serious infection
and possible death from contaminating the peritoneum from the ruptured
appendix. The standard of care is not to wait a four-week period of time
before performing the appendectomy. The Defendants violated the
standard of care by failing to timely perform the appendectomy. 
 
Had Mr. Boston had the appendectomy on or before 8/4/00, more
likely than not his aneurysm would not have ruptured and taken his life.

          Almost 10 months after Dr. Folkers’s expert report was filed, defendants


 filed
a motion to dismiss, asserting that the report was insufficient as a matter of law
because it failed to address the standard of care, the deviation from the standard, and
the causal link to the Decedent’s damages for each defendant. They argued that the
report was merely a general claim of negligence. The trial court granted the motion
and appellants filed this appeal.
Standard of Review
           We review a trial court's order dismissing a claim for failure to comply with the
expert-report requirements in section 13.01(d) of article 4590i for abuse of discretion. 
See Am. Transitional Care Ctrs., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001). 
A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner
without reference to any guiding rules or principles. Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985). When reviewing matters
committed to the trial court’s discretion, a court of appeals may not substitute its own
judgment for the trial court’s judgment. Flores v. Fourth Court of Appeals, 777
S.W.2d 38, 41 (Tex. 1989). Discussion
          Appellants bring a single issue on appeal, contending that the trial court abused
its discretion in dismissing their lawsuit against appellees. Under this single issue,
appellants make five separate arguments. We consider only the first as dispositive. 
          Appellants complain that the trial court erred when it dismissed appellants’
claims against appellees because the expert report was a good faith attempt to satisfy
the article 4590i requirements for all appellees. When considering a motion to
dismiss under section 13.01(l) for failure to comply with section 13.01(d), “[t]he issue
for the trial court is whether ‘the report’ represents a good-faith effort to comply with
the statutory definition of an expert report.” Bowie Mem’l Hosp. v. Wright, 79
S.W.3d 48, 52 (Tex. 2002) (quoting Palacios, 46 S.W.3d at 878). To constitute a
“good-faith effort,” the report must, for each defendant, provide “a fair summary of
the expert’s opinions about the applicable standard of care, the manner in which the
care failed to meet that standard, and the causal relationship between that failure and
the claimed injury.” Palacios, 46 S.W.3d at 878. The report must provide enough
information to fulfill two purposes: (1) to inform the defendant of the specific
conduct the plaintiff has called into question and (2) to provide a basis for the trial
court to conclude that the claims have merit. Id. at 879. The only information
relevant to the inquiry is contained within the four corners of the document. Id. at
878. The report need not marshal all the plaintiff’s proof, but it must include the
expert’s opinion on each of the three elements that the Act identifies: standard of
care, breach, and causal relationship. Id. 
          In the instant case, the expert report states a single standard of care and a single
breach against the three individual appellees as well as seven additional physicians
who are not parties to this appeal. In the report, Dr. Folkers admits that he cannot
determine which physicians were primarily responsible for making medical and
surgical recommendations for the Decedent and recognizes that some of the
physicians were residents of Baylor College of Medicine. Yet he does not specify
which of the physicians are residents or their year of residency. In addition, he does
not specify whether the 10 named physicians are all surgeons or whether some have
other specialties. He states that the defendant physicians failed to meet the standard
of care “by failing to timely perform the appendectomy,” even though some of the
named physicians merely “had some role” in diagnosing the Decedent’s appendicitis. 
Furthermore, Dr. Folkers cannot say whether they were “responsible for making
medical and surgical recommendations.” 
          We hold that the information within the four corners of Dr. Folkers’s report
does not inform the appellees of the specific conduct the appellants have called into
question, nor does it provide the trial court a basis for determining that appellants’
claims have merit. Therefore, the report was not a good faith attempt to satisfy article
4590i, and the trial court did not abuse its discretion in granting the defendants’
motion to dismiss. 
Conclusion
          Having determined that the trial court’s dismissal of appellants’ lawsuit was
not an abuse of discretion, we need not address appellants’ argument that article
4590i does not mandate different standards of care or different facts as to each
defendant. In addition, because appellants’ claims against Baylor College of
Medicine were based on vicarious liability, we need not address appellants’ sub-issues with regard to Baylor.
          We affirm the trial court’s order of dismissal. 
 

                                                             Sam Nuchia
                                                             Justice

Panel consists of Justices Nuchia, Keyes, and Bland.