Opinion issued February 28, 2008




     










In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00360-CV




JOI M. FINDLEY-SMITH, M.D. AND PEGGY TAYLOR, M.D., P.A.,
Appellants

V.

HOLLY SMITH AND HUSBAND, CHRISTOPHER SMITH,
INDIVIDUALLY AND A/N/F OF CAMERON SMITH, A MINOR, Appellees




On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2006-62615




MEMORANDUM OPINION

          In this interlocutory appeal, appellants, Joi M. Findley-Smith, M.D. and Peggy
Taylor, M.D., P.A., challenge the trial court’s order that denied their motion to
dismiss a health care liability claim of appellees, Holly Smith and Husband,
Christopher Smith, Individually and a/n/f of Cameron Smith, A Minor. In two issues
on appeal, appellants argues that (1) the trial court erred in failing to dismiss the
healthcare liability claim because the expert reports were deficient and (2) the trial
court erred in denying objections to the expert reports.
          We affirm.
Background
          Appellees have pled a healthcare liability claim related to the medical care and
treatment appellee Holly Smith received from appellants. Appellees filed a medical
malpractice suit against appellants


 on September 29, 2006. Appellees alleged that
on July 19, 2004, prior to the conception of Cameron Smith, Holly Smith “sought
medical advice and counseling regarding her ability and/or advisability of becoming
pregnant and whether she should seek genetic testing prior to doing so” due to a
family history of cerebral palsy and hydrocephalus. Appellees alleged in their
petition that Dr. Findley-Smith informed them that “[h]ydrocephalus was not genetic
and she should not worry about the information regarding her family history. 
Defendants failed to fully advise Holly Smith of the potential ramifications of
becoming pregnant and that her family history concerns were unwarranted and
genetic testing was not indicated.” Appellees further pled that “Holly Smith was
further informed by Defendant that getting a genetic consult would be insignificant
due to the limited information she had available from her family history.” 
          Appellants responded that Dr. Findley-Smith referred appellees for genetic
counseling and testing. According to Dr. Findley-Smith, appellees informed her that
they had chosen not to undergo genetic counseling. After the July 2004 office visit
with Dr. Findley-Smith, Holly Smith saw Dr. Beth Files for her first prenatal visit. 
Dr. Files ordered an ultrasound which showed that the fetus was normal. Holly Smith
then returned to see Dr. Findley-Smith for prenatal care. Dr. Findley-Smith referred
Holly Smith to see maternal fetal medicine specialists, Dr. Linda Goodrum and Dr.
Thomas Rowe. They recommended an ultrasound, which also showed that the fetus
was normal. On March 17, 2005, Dr. Findley-Smith performed an ultrasound on
appellees that revealed a hydrocephalus head. Appellees’ baby was delivered via
Caesarean section, performed by Dr. Bart Putterman, who is affiliated with Partners
in OB/GYN Care, P.A. Appellees’ baby was born with hydrocephalus alleged to be
the result of appellants’ negligent action or inaction.
          Attached to the original petition were two timely-filed expert reports. The first
expert report was from Jon Gogola, M.D., who opined about the standard of care with
respect to Dr. Findley-Smith. Dr. Gogola stated that he reviewed a multitude of
records, including records “dated 7/19/2004, 11/1/2004, 3/31/2004/, 3/31/2003, the
prenatal record . . . of 11/1/2004, ultrasounds of the index pregnancy, the patients
family background history . . . and the lab result of the patient from UTMB showing
her carrier status for X-linked hydrocephalus.” Dr. Gogola opined on the standard
of care with respect to the history and physical examination, assessment, diagnosis
and treatment of conditions relevant to appellees and concluded that the standard of
care was breached. 
          Dr. Gary D.V. Hankins also provided a timely-filed expert report. Dr. Hankins
stated that he had reviewed medical records from Partners in OB/GYN Care, PA.,
including appellees’ family history records and genetic testing records. Dr. Hankins
also opined on the standard of care with respect to Dr. Findley-Smith and concluded
that the standard was breached. 
          Dr. Findley-Smith filed objections to the appellees’ expert reports and a motion
to dismiss, arguing that appellees did not provide the complete medical records from
Dr. Findley-Smith to the experts. Specifically, she contends that Holly Smith’s
medical records included office notes from July 19, 2004, telephone record notes, and
a precertification information form. Dr. Findley-Smith contends that because this
evidence refutes the facts upon which appellees’ expert reports were based, the expert
reports did not represent a good faith attempt to comply with the statutory
requirements of Chapter 74. Appellees responded that the expert reports represented
a good faith effort to comply with Chapter 74; and they requested a 30-day extension
to correct any deficiencies in the reports, if the court found that they did not. 
          Appellees stated that Dr. Findley-Smith did not advise them that hydrocephalus
was hereditary, and that she stated, to the contrary, that it “was not genetic, and that
genetic testing would not accomplish anything vis-a-vis hydrocephalus.” Appellees
also stated in their response that they had filed amended expert reports that addressed
some of the deficiencies cited by Dr. Findley-Smith. 
          Appellees also filed an amended petition alleging negligence by: (1) failing to
recognize the seriousness of the information presented by Ms. Smith and the genetic
problems the information contained; (2) failure to recognize hydrocephalus as a
genetic condition; (3) failure to exercise ordinary care by either researching genetic
forms of hydrocephalus or consulting a specialist; (4) negligent management of a
patient’s care; (5) failure to refer to genetic testing; (6) failure to provide appellees
with options to avoid the birth of a male child with a high risk of X-linked
hydrocephalus; and (7) failure to recognize and/or diagnose hydrocephalus or the
risks thereof prior to the 28th/29th week of pregnancy. 
          Dr. Findley-Smith replied, continuing to maintain that neither the original
expert reports nor the amended expert reports constituted a good faith effort to
comply with Chapter 74. After a hearing, the trial court denied Dr. Findley-Smith’s
motion to dismiss.


 Dr. Findley-Smith appeals from this order.
Standard of Review
          We review a trial court’s decision on a motion to dismiss under section 74.351
for an abuse of discretion. See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,
46 S.W.3d 873, 875 (Tex. 2001) (predecessor statute); Gray v. CHCA Bayshore L.P.,
189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A trial court
abuses its discretion if it acts in an arbitrary or unreasonable manner without
reference to guiding rules or principles. See Garcia v. Martinez, 988 S.W.2d 219,
222 (Tex. 1999). When reviewing matters committed to the trial court’s discretion,
we may not substitute our own judgment for that of the trial court. Bowie Mem’l
Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). A trial court does not abuse its
discretion merely because it decides a discretionary matter differently than an
appellate court would in a similar circumstance. Gray, 189 S.W.3d at 858.
          Expert Report
          A plaintiff bringing a healthcare liability claim must provide each defendant
health care provider with an expert report or voluntarily non-suit the action. See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2007); Gray, 189 S.W.3d at
858. The expert report is defined as a fair summary of the expert’s opinions as of the
date of the report regarding the applicable standards of care, the manner in which the
care rendered by the health care provider failed to meet the standards, and the causal
relationship between that failure and the injury, harm, or damages claimed. See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (Vernon Supp. 2007). If a plaintiff
timely files an expert report, a defendant may then file an objection challenging the
sufficiency of the report. Id. § 74.351(a). The trial court shall grant a motion to
dismiss only if it appears to the court, after hearing, that the report does not represent
an objective good-faith effort to comply with the definition of an expert report. Id.
§ 74.351(l).
          The only information relevant to the inquiry is within the four corners of the
document. Palacios, 46 S.W.3d at 878. Although the report need not marshal all the
plaintiff’s proof, it must include the expert’s opinion on each of the elements
identified in the statute. See id. at 878–79; Gray, 189 S.W.3d at 859. In setting out
the expert’s opinions, the report must provide enough information to fulfill two
purposes if it is to constitute a good-faith effort. Palacios, 46 S.W.3d at 879. First,
the report must inform the defendant of the specific conduct the plaintiff has called
into question. Id. Second, the report must provide a basis for the trial court to
conclude that the claims have merit. Id. A report that merely states the expert’s
conclusions does not fulfill these two purposes. Id. Rather, the expert must explain
the basis of his statements to link his conclusions to the facts. Bowie, 79 S.W.3d at
52. However, a plaintiff need not present evidence in the report as if she were
actually litigating the merits. Palacios, 46 S.W.3d at 879. Furthermore, the report
can be informal in that the information in the report does not have to meet the same
requirements as the evidence offered in a summary judgment proceeding or at trial. 
Id.
          On appeal, Dr. Findley-Smith argues that appellees must give their experts the
complete medical records pertaining to appellees’ care and that failure to do so shows
that they did not make a good faith effort to produce an expert report. In support of
her argument, Dr. Findley-Smith relies on Palacios, DeLeon v. Vela, and In re Raja. 
See 46 S.W.3d 873, 875 (Tex. 2001), 70 S.W.3d 194, 199 (Tex. App.—San Antonio
2001, pet. denied), and 216 S.W.3d 404, 409 (Tex. App.—Eastland 2006, orig.
proceeding, pet. filed). Dr. Findley-Smith argues that the trial court should look
beyond the appellees’ expert reports and focus on Holly Smith’s medical records. Dr.
Findley-Smith’s arguments are not supported by the cases cited, and her arguments
contradict the Texas Supreme Court’s holding in Palacios. 
          In Palacios, the Texas Supreme Court stated that the trial court “should look
no further than the report . . .” 46 S.W.3d at 878. In construing former section
13.01(l), the court stated that the “issue for the trial court is whether ‘the report’
represents a good-faith effort to comply with the statutory definition of an expert
report.” Id. Thus, as to each defendant, the report must contain “a fair summary of
the expert’s opinions about the applicable standard of care, the manner in which the
care failed to meet that standard, and the causal relationship between that failure and
the claimed injury.” Id. Moreover, Palacios specifically states that “[b]ecause the
statute focuses on what the report discusses, the only information relevant to the
inquiry is within the four corners of the document.” Id. 
          Dr. Findley-Smith attempts to interpret the statement in Palacios that “the
report must provide a basis for the trial court to conclude that the claims have merit”
as a requirement that if the expert does not have or has not reviewed all of the medical
records, then appellees have not made a good-faith effort in producing an expert
report. We disagree with Dr. Findley-Smith’s interpretation of Palacios. It is only
necessary that the trial court conclude that the claims have merit by looking at the
expert report itself. See id. Otherwise, the trial court would be put in a position of
deciding the merits of the case in summary judgment fashion, which Palacios
prohibits. See id. at 879 (stating that “plaintiff need not present evidence in the report
as if it were actually litigating the merits. The report can be informal in that the
information in the report does not have to meet the same requirements as the evidence
offered in a summary-judgment proceeding or at trial.”). 
          In In re Raja, the Eastland Court of Appeals addressed whether section 74.351
allowed a plaintiff to take a Rule 202 deposition before filing an expert report. 216
S.W.3d at 409. In dicta, the court stated that section 74.351(l) “allows trial courts to
consider the quality of the defendant’s records when determining whether a good
faith effort has been made.” Id. The Eastland Court of Appeals cited no authority in
support of this proposition and we note that Palacios contradicts this proposition. 
See Palacios, 46 S.W.3d at 878 (“Because the statute focuses on what the report
discussed, the only information relevant to the inquiry is within the four corners of
the document.”). Regardless of the accuracy of Raja’s dicta, we recognize that the
trial court has discretion in reviewing expert reports. To this end, the trial court could
have considered the records reviewed by the experts and concluded that appellees
made a good faith effort in complying with the statute. Thus, we cannot conclude that
In re Raja shows that the trial court abused its discretion because complete records
may or may not have been given to an expert.
          Finally, in De Leon, the San Antonio Court of Appeals held that the expert
report did not satisfy the statute because the report “neither state[d] his opinion on the
applicable standard of care, nor [stated] whether there was a breach of that standard. 
[The expert] merely state[d] that ‘so many surgeries were not indicated’ and
‘unnecessary,’ but fail[ed] to indicate what the acceptable standard of care was for a
patient in De Leon’s position.” 70 S.W.3d at 199. 
          The insufficient expert report in De Leon is distinguishable from the expert
reports


 submitted by appellees. Here, the amended expert report of Dr. Hankins
states, 
D. Medical records reviewed:
 
I have reviewed medical records pertaining to Holly Smith from partners
in OB/GYN Care, PA., her family history records and genetic testing
records.
 
E. Applicable standard of care with respect to the history and
physical examination, assessment, diagnosis and treatment of
conditions relevant to this patient and specific actions that are taken
in order to meet the standard of care: Standard of care in this
particular case would require the obstetrician, upon knowledge that this
particular patient had two uncles that were deceased at ages 5 and 6
years of hydrocephalus, to recognize that there are hereditary forms of
hydrocephaly. Specifically, there is an x-linked form of hydrocephaly
and a history of two males having been affected in the family would put
this woman as being at risk for carriage of the defect. This is a defect
that can be diagnosed by analysis of the maternal chromosomal
compliment. Additionally, prenatal diagnosis could be performed early
in pregnancy via amniocentesis for definitive diagnosis in the fetus. An
obstetrician confronted with this information has the option of either
knowing the information and doing the counseling themselves, or
referring the patient to a subspecialist in medical genetics or maternal
fetal medicine. The obligation is to make the patient aware that there is
a condition that could potentially have great impact upon the pregnancy
and that this can be diagnosed as regards both the woman’s carrier status
as well as whether or not the fetus would be effected. Failure to do so
is a clear breach in standard of care.
 
G. The standards that were not followed by Dr. Joi M. Findley-Smith: Counseling, testing or referral to a genetic specialist to
investigate the history of hydrocephalus in the family did not occur
when . . . Ms. Smith presented for preconception visits. 
 
H. The specific conduct of acts/omissions evidencing that the care
provided to the patient failed to meet the standard by Dr. Joi M.
Findley-Smith: Did not advise the patient of the possible hereditary
nature of hydrocephalus. Further, Dr. Findley-Smith breached the
standard of care by not conducting genetic testing on the patient to
determine if the patient carried the deleterious gene, or referring the
patient to a specialist for such testing. 
 
I. Dr. Joi M. Findley-Smith should have taken the following specific
actions to be within the standard of care: Should have advised Ms.
Smith of the possible hereditary nature of hydrocephalus and offered
either testing for such condition or referred her to a genetic specialist for
evaluation.
 
J. Causal relationship between the Failure and the claimed injury:
Dr. Joi M. Findley-Smith’s negligent failure to advise the patient of the
possible transmission of hydrocephalus to her baby and negligent failure
to perform genetic testing to rule out the risk deprived the patient of the
opportunity to utilize alternative paths to motherhood, such as adoption
or in-vitro fertilization with pre-implant genetic testing. Had Dr.
Findley-Smith complied with the standard of care, Holly Smith asserts
that she would have availed herself of these options. If she had, this
would have prevented the transmission of the deleterious gene to her
child. Because of Dr. Findley-Smith’s negligence, therefore, the gene
was transmitted and the child was born with hydrocephalus. This
disease will require extensive medical and life care that would not be
required if the child did not suffer from hydrocephalus. Accordingly,
Dr. Findley-Smith’s negligence was a proximate cause of the medical
expenses that will necessarily be incurred in treating the child’s
hydrocephalus.
 
          Dr. Gogola’s expert report states
D. Medical records reviewed
 
In preparing this opinion, I have reviewed Dr. Findley-Smith’s record
of Holly Smith dated 7/19/2004, 11/1/2004, 3/31/2004, 3/31/2003, the
prenatal record first visit of which is 11/1/2004, ultrasounds of the index
pregnancy, the patients family background history (exhibit 1), and the
lab result of the patient from UTMB showing her carrier status for X-linked hydrocephalus.
 
E. Applicable standard of care with respect to the history and
physical examination, assessment, diagnosis and treatment of
conditions relevant to this patient and specific actions that are taken
in order to meet the standard of care:
 
The standard of care when a patient presents seeking prenatal counseling
is to obtain a through [sic] and complete medical and family history. 
The patient should be encouraged to obtain as much information as
possible about her personal and family history in order to provide such
counseling. In those instances that a history of conditions which may
have a heritable etiology, the doctor is obliged to discuss available
testing for such an etiology or refer the patient to a specialist (genetic
counselor or maternal fetal medicine physician) who can better provide
testing, counseling and care. Since hydrocephalus is caused by many
different etiologies including chromosomal abnormalities, most notably
X-linked hydrocephalus, a family history of such in a first degree
relative who is a male (or second degree maternal relative) suggests the
need for genetic testing or referral. In addition, the presence of a family
history of 2 first degree relatives with the same disorder is highly
suggestive of an x-linked disorder, again requiring testing or referral. 
 
The standard is carried out by the following specific actions: Genetic
testing or referral to a genetic specialist and/or maternal fetal medicine
specialist when a history compatible with x-linked hydrocephalus is
presented in a pre-conceptual setting.
          . . . 
G. The standards that were not followed by Dr. Joi M. Findley-Smith: 
 
Discussion of testing, actual testing or referral to a genetic specialist to
further discuss the availability of testing did not occur.
 
H. The specific conduct of acts/omissions evidencing that the care
provided to the patient failed to meet the standard by Dr. Joi M.
Findley-Smith.
 
. . . Dr. Joi M. Findley-Smith did not advise the patient of the possible
hereditary nature of hydrocephalus, and did not offer testing or referral
to a specialist to evaluate such possibility. Dr. Findley-Smith thus
breached the standard of care by not conducting genetic testing on Ms.
Smith (the patient) to determine if the patient carried the deleterious
gene, or referring the patient to a specialist for such testing. 
 
I. Dr. Joi M. Findley-Smith should have taken the following specific
actions to be within the standard of care:
 
. . . Dr. Joi M. Findley-Smith should have advised the patient of the
possible hereditary nature of hydrocephalus, and either offered the
patient testing for such condition or referred the patient to a genetic
specialist to evaluate such a possibility.
 
J. Causal relationship between the Failure and the claimed injury:
 
The failure of . . . Dr. Joi M. Findley-Smith to provide appropriate
counseling, testing and/or referral, deprived the patient of the right to
make a fully informed decision regarding conceiving despite seeking
care for just such advice. Dr. Findley-Smith’s negligent failure to advise
the patient of the possible transmission of hydrocephalus to her baby
and negligent failure to perform (or arrange for) genetic testing to rule
out that risk deprived the patient of the opportunity to utilize alternative
paths to motherhood, such as adoption or in-vitro fertilization with pre-implantation genetic testing. Had Dr. Findley-Smith complied with the
standard of care, and Ms. Smith availed herself of these options as she
asserts she would have, this would have prevented the transmission of
the deleterious gene to the child who was born with hydrocephalus. 
This disease will require extensive medical and life care that would not
be required if the child did not suffer from hydrocephalus. Accordingly,
Dr. Findley-Smith’s negligence was a proximate cause of the medical
expenses that will necessarily be incurred in treating the child’s
hydrocephalus. 

          Both amended expert reports satisfy the requirements provided in Palacios by
informing the defendant of the specific conduct called into question and giving the
trial court a basis to conclude whether or not the claims have merit. See Palacios, 46
S.W.3d at 878–79. The reports comply with section 74.351 by detailing the standard
of care to which Dr. Findley-Smith was required to conform, the breach of that
standard, causation, and damages. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351;
Palacios, 46 S.W.3d at 878. Based on the standards articulated in Palacios, we
conclude that appellees made a good faith effort to comply with the statute and that
the trial court did not err in overruling Dr. Findley-Smith’s objections to the expert
reports. Accordingly, the trial court did not abuse its discretion in denying Dr.
Findley-Smith’s motion to dismiss.
          We overrule Dr. Findley-Smith’s two issues on appeal.
Conclusion
          We affirm the order that denied Dr. Findley-Smith’s motion to dismiss. 
 
 

                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Nuchia, Jennings, and Keyes.