Opinion issued March 10, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00778-CV

———————————

Robert Tom, M.D. and Akihiro Izumi, M.D., Appellants

V.

Mark Estrada, Appellee



 



 

On Appeal from the 164th District Court 

Harris County, Texas



Trial Court Case No. 2009-73370



 

MEMORANDUM OPINION

In this interlocutory appeal,[1]
appellants, Robert Tom, M.D. and Akihiro Izumi, M.D., challenge the trial
court’s order denying their motion to dismiss the health care liability claim[2]
of appellee, Mark Estrada.  In their sole
issue, appellants contend that the trial court erred in concluding that
Estrada’s medical expert report, written by Dr. Lisbon, is sufficient and not
dismissing the claim.  

We affirm.

Background 

In his original petition, Estrada
asserts a health care liability claim against Drs. Tom and Izumi, and an
orthopedic surgeon, an anesthesiologist, Foundation Surgical Affiliates,
Houston Orthopedic Surgical Hospital, and Association Anesthesiology (collectively,
the “defendants”).[3]  Estrada alleges that on November 15, 2007, after
a surgical procedure to repair a “right fractured humerus [sic] and torn
rotator cuff,” the defendants had a duty “to properly administer anesthesia,
monitor [him] during the anesthesia period and post-surgical period, maintain
proper ventilation and circulatory support, and to properly diagnose and treat [his]
resulting adverse reactions prior to the devastating consequences of the
anesthesia as performed.”  After the
surgical procedure, Estrada “was noted to be agitated, unresponsive to voice
and commands, and had suffered a period of apnea.”  A head CT scan was not ordered until
approximately nine hours after the surgical procedure had ended, the results of
which “were consistent with a left MCA infarct.”  This “negligently slow . . .work up” and
treatment of Estrada’s “unresponsiveness” and “abnormal neurological symptoms”
in the recovery room resulted in Estrada’s “devastating neurological outcome.”  

Estrada timely served appellants
with the expert report of Dr. Lisbon, who noted that after surgery at 15:25,
Estrada was “agitated and unresponsive to voice”; at 17:45, Dr. Izumi was at Estrada’s
bedside and Dr. Tom was to evaluate Estrada; and, at 23:55, a CT scan of
Estrada’s head was ordered. The CT scan was consistent with a “left MCA
infract.”  Lisbon opined that the
standard of care for “a patient exhibiting abnormal neurological symptoms in
the immediate post-operative period requires immediate assessment, work-up and intervention to diagnose and
treat potential causes.”  (Emphasis
added.)  He further opined that the
defendants deviated from the standard of care by their
“slow . . . work up” and treatment of
Estrada’s “unresponsiveness” and “abnormal neurological symptoms” in the
recovery room.  (Emphasis added.)  Lisbon concluded that had Estrada’s
abnormal neurological symptoms “been aggressively worked up and treated” in the
recovery room, Estrada, in a “reasonable degree of medical probability,” would
not have suffered a devastating neurological outcome.  He opined that

[The defendants] deviated
from the usual accepted standard of care in the following ways: (1) The
physicians should have kept Mr. Estrada’s blood pressure at or above his usual
level while he was having surgery.  This
is particularly important when surgery is done in the beach chair position
where the head is higher than the heart; (2) The physicians were slow to work
up and treat his unresponsiveness and abnormal neurological examination in the
recovery room; (3) The physicians responsible for the work-up of Mr. Estrada’s
abnormal neurological examination in the PACU are the orthopedic surgeon . . . and
the anesthesiologist.  

 

Appellants objected to Dr. Lisbon’s
report on the ground that he does not address any care or treatment allegedly
provided by appellants nor does he “implicate any conduct” of appellants.  Appellants noted that Lisbon, in his report,
“hardly mentions” them, “let alone opine[s] as to what care either allegedly provided
to . . . Estrada, how that care violated the standard of care, or how any such
violation caused . . . Estrada’s injury.” 
Appellants also complained that Lisbon, in his expert report, does not provide
them with a fair summary of his opinion on the issue of causation, as it only
contains conclusory statements regarding causation.   

In response to appellants’
objections, Estrada timely served upon them Dr. Lisbon’s supplemental expert
report, in which he clarifies that Drs. Izumi and Tom were “physicians either
attending or expecting to attend to Mark Estrada in the post-operative period.”
 He notes that his initial report reflects
that “Izumi was at the bedside” of Estrada at 17:45 and, as of 17:45, “Tom was
to evaluate the patient.”  Lisbon again opines
that “the standard of care for a patient exhibiting abnormal neurological
symptoms in the immediate post-operative period requires immediate assessment, work-up and intervention to diagnose and
treat potential causes.”  (Emphasis
added.)  He identifies Izumi and Tom as
“two physicians involved in and responsible for the care of” Estrada in the
recovery room and opines that Izumi and Tom “violated the standard of care in
their failure and delay to work up and treat the unresponsiveness” and abnormal
neurological symptoms identified in “Estrada in the recovery room prior to
18:00.”  Lisbon opines that had the
“physician staff” timely intervened with diagnostic and treatment measures in
response to abnormal neurological symptoms in Estrada identified as early as
15:25, then, “in reasonable medical probability, they would have reduced or
minimized the neurological damage suffered by . . . Estrada and he would not
have suffered the devastating neurological outcome now suffered as a direct
result of the failure to timely diagnose and treat his abnormal neurological
state.”  

Appellants objected to Dr. Lisbon’s
supplemental expert report and moved to dismiss[4]
Estrada’s health care liability claim.  Appellants
argued that Dr. Lisbon’s reports remain deficient because “(1) they do not
provide a fair summary of [Lisbon’s] opinion as to . . . the applicable
standard of care required of Dr. Tom and Dr. Izumi or how the conduct of either
departed from such standard, and (2) [they] fail to provide a fair summary of
[Lisbon’s] opinions concerning the causal link between any conduct of
Defendants and the allegedly resulting injury to . . . Estrada.”  They asserted that “Lisbon states only that
had . . . Estrada been properly treated, he would not have suffered such a devastating
injury.”  Appellants also argued that the
reports cannot be sufficient because they fail to elaborate in any way on what
should have been done or how the alleged failures to timely “work up” and treat
Estrada’s unresponsiveness and abnormal neurological symptoms in the recovery
room contributed to Estrada’s injury.  

In his response to appellants’
objections and motion to dismiss, Estrada argued that the reports meet the
requirements of an expert report[5]
because they “delineate the standard of care in the PACU,” inform the
defendants of “how such standard was breached in the PACU,” and inform the
defendants of how the breaches caused Estrada’s injuries.  Estrada noted that terms such as
“assessment,” “work-up,” and “intervention” are common medical terms, not
unknown to the physicians who care for patients in the PACU, from which the
defendants can determine the meaning of Dr. Lisbon’s articulation of the
standard of care and what the defendants should have done differently.  

Standard of Review

We review a trial court’s decision on a motion to dismiss a
health care liability claim for an abuse of discretion.  See Am. Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 875 (Tex. 2001); Gray v. CHCA Bayshore L.P., 189 S.W.3d 855, 858 (Tex. App.—Houston
[1st Dist.] 2006, no pet.).  A trial
court abuses its discretion if it acts in an arbitrary or unreasonable manner
without reference to guiding rules or principles.  See
Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999).  When reviewing matters committed to the trial
court’s discretion, we may not substitute our own judgment for that of the
trial court.  Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002).  A trial court does not abuse its discretion
merely because it decides a discretionary matter differently than an appellate
court would in a similar circumstance.  Gray, 189 S.W.3d at 858; Harris Cnty. Hosp. Dist. v. Garrett, 232
S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Sufficiency of Expert Report

In their sole issue, appellants argue that the trial court
erred in denying their motion to dismiss Estrada’s health care liability claim
because “Dr. Lisbon fails to describe the standard of care and alleged breaches
thereof with sufficient specificity” and “Dr. Lisbon’s reports fail to provide
a fair summary of his opinions concerning the causal link between any conduct
of [appellants] and the allegedly resulting injury” to Estrada.

A plaintiff bringing a health care liability claim must
provide each defendant health care provider with an expert report.  See Tex. Civ. Prac. & Rem. Code Ann. §
74.351 (Vernon Supp. 2010); Gray, 189
S.W.3d at 858.  The expert report must
provide a fair summary of the expert’s opinions as of the date of the report
regarding the applicable standards of care, the manner in which the care
rendered by the health care provider failed to meet the standards, and the
causal relationship between that failure and the injury, harm, or damages
claimed.  See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(r)(6).  

If a defendant files a motion to dismiss challenging the
adequacy of the expert report, the trial court shall grant the motion to
dismiss only if it appears to the court, after a hearing, that the report does
not represent an objective good-faith effort to comply with the definition of
an expert report.  Id. § 74.351(b), (l).  The
only information relevant to the inquiry is that within the four corners of the
document.  Palacios, 46 S.W.3d at 878.  Although
the plaintiff need not marshal all of his proof in the report, the report must
include the expert’s opinion on each of the elements identified in the statute.
 See
id. at 878–79; Gray, 189 S.W.3d
at 859.  In setting out the expert’s
opinions, the report must provide enough information to fulfill two purposes to
constitute a good-faith effort.  Palacios, 46 S.W.3d at 879.  First, the report must inform the defendant of
the specific conduct the plaintiff has called into question.  Id.  Second, the report must provide a basis for
the trial court to conclude that the claim has merit.  Id.  A report that merely states the expert’s
conclusions does not fulfill these two purposes.  Id.  The expert must explain the basis of his statements
to link his conclusions to the facts.  Bowie, 79 S.W.3d at 52.  However, a plaintiff need not present evidence
in the report as if he were actually litigating the merits.  Palacios,
46 S.W.3d at 879.  Furthermore, the
report may be informal in that the information in the report does not have to
meet the same requirements as the evidence offered in a summary judgment
proceeding or trial.  Id.  We
review the sufficiency of Dr. Lisbon’s report by looking at the four corners of
the report.  See Palacios, 46 S.W.3d
at 878.  

Standard of Care

Appellants argue that Dr. Lisbon, in his expert reports, does
not describe the standard of care and the alleged breaches thereof with
sufficient specificity because the reports “deal[] only in vague, undefined
terms” about how the doctors violated the standard of care by “being slow to
participate in these non-descript activities.” 
Appellants further argue that use of these “vague” “non-descript
activities” is not sufficient to put them on notice of “what care was expected,
but not given” because the report does not discuss what particular conduct
would be required to “work-up” or “intervene.” 
In support of their argument, appellants rely on Ching-Chiang Chu v. Fields, No. 01-08-00417-CV, 2009 WL 40437, at
*4 (Tex. App.—Houston [1st Dist.] Jan. 8, 2009, no pet.).  In Fields,
this Court held that an expert’s statement that the standard of care required
“a proper, thorough, successful, and immediate treatment” of the patient’s
complaints failed to “include specific information about what care” the doctor
was expected to give.  Id. 


Here, in his report, Dr. Lisbon states the standard of care
required for a post-surgery patient with abnormal neurological symptoms, in
pertinent part, as follows:

Dr. Izumi and Dr. Tom are described in the records in
my initial report as physicians either attending or expecting to attend to Mark
Estrada in the post-operative period. 
Mr. Estrada began exhibiting abnormal neurological symptoms in the
post-operative period and failed to regain consciousness in a timely
manner.  As my initial report states,
“the standard of care for a patient exhibiting abnormal neurological symptoms
in the immediate post-operative
period requires immediate assessment,
work-up and intervention to diagnose and treat potential causes.”. . .

 

In my opinion, Dr. . . . Izumi and Dr. . . .Tom
violated the standard of care in their failure
and delay to work up and treat the unresponsiveness and abnormal
neurological examination identified in Mark Estrada in the recovery room prior
to 18:00 on 11/15/07. . . . 

 

Had Dr. Tom and Dr. Izumi, as well as the other care
providers responsible for Mr. Estrada in the PACU, timely intervened with
diagnostic and treatment measures in response to an abnormal neurological
examination in Mr. Estrada identified as early as 15:25, then, in reasonable
medical probability, they would have reduced or minimized the neurological
damage suffered by Mark Estrada and he would not have suffered the devastating
neurological outcome now suffered as a direct result of the failure to timely
diagnose and treat his abnormal neurological state.  

 

(Emphasis
added.) 

As revealed in his supplemental report, Dr. Lisbon clearly
states that, given Estrada’s “abnormal neurological symptoms,” Drs. Izumi and
Tom should have immediately
intervened to assess and diagnose the causes of Estrada’s condition.  (Emphasis added.)  Although the terms “assessment,” “work-up,” and
“intervention” are not defined in his expert reports, Lisbon does clearly
convey that the doctors should have monitored and immediately assessed
Estrada’s condition to diagnose and treat the causes of his unresponsiveness.  Lisbon explained that in order for the defendants
to have complied with the standard of care, they should have performed a “work-up”
to determine the cause of his neurological abnormalities.  In short, they should have acted quickly to
diagnose his condition.  Accordingly, we hold
that the trial court did not abuse its discretion in concluding that Dr.
Lisbon, in his reports, sufficiently articulated the standard of care of Drs.
Izumi and Tom and how they breached the standard.  

Causation

Appellants also argue that the trial court erred in denying
their motion to dismiss because Dr. Lisbon, in his reports, does not “provide a
fair summary of his opinions concerning the causal link between any conduct of
[appellants] and the allegedly resulting injury” to Estrada.  They assert that Lisbon, in his reports,
“essentially states only that had Mr. Estrada been properly treated, he would
not have suffered such a devastating injury.” 
They also assert that he does not elaborate in any way as to how their
alleged failures to timely diagnose and treat Estrada’s unresponsiveness and
abnormal neurological symptoms in the recovery room caused or contributed to
Estrada’s injury.  In regard to causation,
Lisbon, in his reports, states that at 17:45, Dr. Izumi was at Estrada’s
bedside, and “Dr. Tom was to evaluate the patient”; at 19:00, Estrada did not
follow commands, but a CT scan was not ordered until 23:55; “it is readily
foreseeable that the failure to timely diagnose and intervene in a PACU on
behalf of a patient with an abnormal neurological examination can result in
irreversible neurological injury”; and, had appellants “aggressively worked up
and treated” the unresponsiveness prior to 18:00, when appellants were present,
“they would have reduced or minimized the neurological damage” suffered by
Estrada.  

In order to constitute a “good-faith effort,” an expert, in
his report, must explain the basis of his statements to link his conclusions to
the facts.  Bowie, 79 S.W.3d at 52.  The
facts presented in Dr. Lisbon’s expert reports provide a timeline noting when
Estrada’s “abnormal neurological” condition was first observed, when appellants
were present, Estrada’s unresponsiveness, and when a CT scan was finally ordered,
nine hours after Estrada’s neurological condition was first noted.  In his report, Lisbon states that if
appellants had timely diagnosed and treated Estrada’s condition prior to 18:00,
then “they would have reduced or minimized the neurological damage” suffered by
Estrada.  Thus, Dr. Lisbon links
Estrada’s neurological damage to the alleged breach of the standard of care, i.e.,
the failure of the doctors to timely intervene, diagnose, and treat his
condition, thus, sufficiently explaining causation.  Although Lisbon, in his reports, could have
been more specific as to exactly how Estrada’s neurological injuries would have
been reduced or minimized, we cannot say that the trial court’s conclusion that
it was sufficient constitutes an abuse of discretion.  See
Sanjar v. Turner, 252 S.W.3d 460, 467 (Tex. App.—Houston [14th Dist.] 2008,
no pet.).  Accordingly, we hold that the
trial court did not abuse its discretion in concluding that Dr. Lisbon’s expert
reports sufficiently articulated that the omissions of Drs. Izumi and Tom
caused Estrada’s injuries.  

In sum, Dr. Lisbon explained that the standard of care for a
patient exhibiting abnormal neurological symptoms required the doctors to
immediately assess his condition and intervene in order to “diagnose and treat
potential causes.”  Lisbon identified specific
omissions of appellants that were negligent: their failure and delay in
diagnosing and treating Estrada’s unresponsiveness prior to 18:00.  The reports provided appellants
with notice that Estrada suffered neurological injuries “as a direct result of
[appellants’] failure to timely diagnose and treat his abnormal neurological
state” and, had appellants “aggressively worked up and treated” Estrada, they,
in reasonable medical probability, would have reduced or minimized the
neurological damage suffered by Estrada. 
Accordingly, we hold that the trial court did not err in not dismissing
the health care liability claim of Estrada.

We overrule appellants’ sole issue.  

 

 

 

 

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Higley, and Brown.











[1]           See
Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(9) (Vernon 2008). 

 





[2]           Id.
§ 74.351 (Vernon Supp. 2010).

 





[3]           Only Dr. Tom and Dr. Izumi are parties
to this appeal.  





[4]           See
Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351.

 





[5]           See
id. § 74.351.