# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00079-CV

### Doctors Data, Inc., Appellant

### v.

### Ronald Stemp and Carrie Stemp, Appellees

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. D-1-GN-09-002279, HONORABLE TIM SULAK, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Ronald and Carrie Stemp (collectively, "the Stemps") sued Doctors Data, Inc., Care Clinics, Inc., Nutrigenomics, Inc., Jesus Antonio Caquias, MD, and other individuals and entities, in connection with Ronald Stemp's treatment at a facility in Austin, Texas, known as Care Clinics. The Stemps alleged multiple claims, including assault, violation of the Deceptive Trade Practices Act, breach of fiduciary duty, and fraud and fraud-based acts and omissions. Doctors Data moved to dismiss the action against it on the basis that the Stemps asserted health-care-liability claims but failed to serve their medical-expert report within the time required by section 74.351 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 74.351. Doctors Data contended that it is a health-care provider, that the Stemps' claims are health-care-liability claims, and that the trial court erred by failing to dismiss the cause as a result of the Stemps' failure to comply with section 74.351. The Stemps responded that their complaints sound in fraud and, in

any event, Doctors Data is not a health-care provider. The trial court rendered an interlocutory order denying Doctors Data's motion to dismiss. Doctors Data appeals. We will affirm.

## STANDARD OF REVIEW

A trial court's ruling on a motion to dismiss a cause for failure to comply with section 74.351(b) is subject to review for abuse of discretion. *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001).

## BACKGROUND

Care Clinics, Inc., and Nutrigenomics, Inc., are both Texas Corporations. Doctors Data, Inc., is an Illinois corporation.[1] Dr. Jesus Antonio Caquias is a physician licensed to practice medicine in Texas. Care Clinics apparently employed Dr. Caquias to perform medical work requiring a physician.

Care Clinics holds itself out to be a homeopathic or naturopathic clinic, specializing in alternative treatment for autistic children. On his initial visit to Care Clinics, Ronald[2] met with Kazuko Curtin, president and sole director of Care Clinics, Inc. Curtin and Jeff Baker, an employee, informed Ronald that he likely suffered from heavy-metal poisoning, Alzheimer's disease, and heart disease. Neither Curtin nor Baker is a physician; Baker claims to be a doctor of naturopathic medicine. The State of Texas does not license homeopathic clinics or naturopathic doctors.

---

[1] An uncertified copy of an assumed name certificate form attached to a Doctors Data pleading states that Nutrigenomics, Inc. intended to do business in Travis County as "Care Clinics." It is unclear whether Care Clinics, Inc. and Care Clinics are the same or related entities.

[2] To avoid confusion, we will refer to Ronald by his first name where appropriate.

Care Clinics does not have a laboratory. Tests on specimens taken at Care Clinics were conducted by outside laboratories, including Doctors Data.

Ronald underwent multiple tests at Care Clinics, including laboratory analysis of his urine to determine whether it contained toxic metals. Doctors Data performed some laboratory analysis of the samples for Care Clinics. Allegedly, a provoking agent was administered to Ronald's samples, causing elevated levels of lead, heavy metals, and the like. The Stemps alleged that Ronald's true levels were normal, as later determined by medical professionals, and the testing and treatment were fraudulently administered as part of a scheme among the parties to justify unnecessary testing and treatment and to charge and collect costly and fraudulent bills. Ronald underwent chelation therapy,[3] which he discontinued after ten months when he concluded that the treatment proved unsuccessful.

The Stemps unsuccessfully attempted to obtain copies of Stemp's records from Care Clinics. Their attorney also made demand and made several unsuccessful attempts to obtain the records. At some point, the Federal Bureau of Investigation and the Internal Revenue Service seized control of the records of Care Clinics. The Stemps attempted to obtain copies of the records from these federal agencies, but their requests were declined. They were not able to obtain the necessary records through the U.S. Attorney's Office from the Department of Justice until several months after they filed suit. They filed an expert report relating to their claims, but it was not filed within the time limit provided by section 74.351.

---

[3] Chelation therapy is a medical procedure that involves the administration of certain agents to remove heavy metals from the body.

A claimant urging health-care-liability claims has a duty to serve an expert report on the defendant within the time prescribed in the statute. *See* Tex. Civ. Prac. & Rem. Code § 74.351. The Stemps concede that if their claims are health-care-liability claims, and if Doctors Data is a health-care provider, they missed the deadline due to the particular facts of their case and failed to serve their expert report in time.

Doctors Data filed a motion to dismiss the cause of action against it due to the Stemps' untimely filing of their expert report. As a basis for its motion, Doctors Data contended that the Stemps' complaints are health-care-liability claims and that it is a health-care provider because it was both an independent contractor of Dr. Caquias and an affiliate of Dr. Caquias. In support of its motion, Doctors Data attached to its motion and relied upon the plaintiffs' original petition, a copy of a contract between Doctors Data, Inc. and Nutrigenomics, Inc., an uncertified copy of an assumed name certificate, an affidavit from Dr. Caquias with attachments, and excerpts from Ronald Stemp's deposition.

Dr. Caquias attached to his affidavit copies of some of Ronald's Care Clinics records and lab tests by Doctors Data. The doctor conceded that the records belonged to Care Clinics, and not to him, and that he is not the custodian of the records. As a result of the Stemps' objections to the affidavit, the trial court ruled that the records were not properly authenticated. Doctors Data does not complain of this ruling.

Dr. Caquias swore in his affidavit that he examined Ronald and ordered testing from Doctors Data related to his medical complaints. Ronald points out that in his deposition he testified

that he never met Dr. Caquias or spoke with him until Ronald's deposition, and that Dr. Caquias never examined him or met with him to discuss any test results or for any reason.

Doctors Data attached to its motion what purports to be an assumed-name certificate reflecting that Nutrigenomics, Inc., intended to do business in Travis County as "Care Clinics." It also attached a copy of a contract between Nutrigenomics, Inc. and Doctors Data, Inc., whereby Nutrigenomics would use Doctors Data exclusively for certain lab testing in exchange for Doctors Data's performing tests for Nutrigenomics at a discounted price. Doctors Data asserted that "by virtue of this written agreement," Dr. Caquias ordered Doctors Data to perform lab work on Ronald's specimens taken at Care Clinics. The agreement was dated and commenced three months after Ronald discontinued going to Care Clinics; thus, it does not relate to the period when Ronald was being seen and tested at Care Clinics. In any event, the agreement does not make any reference to Care Clinics or Care Clinics, Inc. or provide any agreement for Doctors Data to perform services for Care Clinics.

## DISCUSSION

The trial court declined to dismiss the cause against Doctors Data. The ruling must be upheld unless Doctors Data can show that the trial court abused its discretion by denying its motion. Even assuming without deciding for purposes of this review that the Stemps' claims are health-care-liability claims, Doctors Data must also demonstrate that it is a health-care provider. To do so, the record must show that Doctors Data is an independent contractor or an affiliate of Dr. Caquias, the two grounds it alleged in its motion to dismiss.

5

Several statutes relate to determining Doctors Data's status as a health-care provider. A health-care provider is defined as any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care. Tex. Civ. Prac. & Rem. Code § 74.001(a)(12)(A). The record contains no evidence that Doctors Data, Inc., is licensed, certified, registered, or chartered by the State for this purpose. Thus, although Doctors Data apparently performs laboratory services, we cannot say that Doctors Data comes within the primary definition of health-care provider.

The term also includes an affiliate of a health-care provider or physician. *Id.* § 74.001(a)(12)(B)(i). An "affiliate" is a person who directly or indirectly controls, is controlled by, or is under common control with a specified person. *Id.* § 74.001(1). "Control" means the possession of power to direct or cause the direction of the management and policies of the person, through ownership, by contract, or otherwise. *Id.* § 74.001(3). It is undisputed that Dr. Caquias is licensed to practice medicine in Texas. Although Doctors Data asserted in its motion below that it was an affiliate of Dr. Caquias, it does not make this argument on appeal.

The term "health care provider" also includes an employee, independent contractor, or agent of a health-care provider or physician acting in the course and scope of the employment or contractual relationship. *Id.* § 74.001(a)(12)(B)(ii). On appeal, Doctors Data suggests that it is an independent contractor of Care Clinics. This was not a ground alleged in its motion to dismiss and thus cannot be a ground for reversal of the trial court's ruling. In any event, the record does not contain any evidence that Care Clinics, Care Clinics, Inc., or Nutrigenomics, Inc. is licensed, certified, registered, or chartered by the State of Texas to provide health care. Indeed, the State of

6

Texas does not license homeopathic, naturopathic, or such facilities. Even if Doctors Data were an independent contractor of Care Clinics, that would not qualify Doctors Data as a health-care provider.

Finally, Doctors Data alleged in its motion and argues on appeal that it is a health-care provider because it is an independent contractor of Dr. Caquias, a licensed physician. Doctors Data's position seems to be that a contractual relationship with an employer can create a contractual relationship with the employer's agent or employee. Doctors Data argues that Care Clinics contracted with Doctors Data to perform lab work for its medical director, Dr. Caquias ordered lab tests, Doctors Data performed the tests, and by doing so Doctors Data acted as the doctor's independent contractor. We disagree. An independent contractor relationship does not require a written agreement; it can be created by implication. *Pitchfork Land & Cattle Co. v. King*, 346 S.W.2d 598, 602-04 (Tex. 1961). Doctors Data contends that it provided specific services to Dr. Caquias which created an independent-contractor relationship with the doctor. Dr. Caquias does not claim to have any independent agreement with Doctors Data. Dr. Caquias was an employee of Care Clinics. He did not have a contractual agreement with Doctors Data. Even assuming Doctors Data had an agreement with Care Clinics, his employer, that agreement does not somehow create an agreement with Dr. Caquias. As earlier noted, any written agreement was between Nutrigenomics and Doctors Data and became effective several months after Ronald quit Care Clinics. Thus, the record does not support the conclusion that Doctors Data was an independent contractor of Dr. Caquias.

**CONCLUSION**

Doctors Data has not shown from the record before us that it is a health-care provider; thus, it cannot show that the trial court abused its discretion by denying its motion to dismiss. We overrule all of Doctors Data's issues on appeal and affirm the trial court's ruling.

_____

Marilyn Aboussie, Justice

Before Justices Goodwin, Field, and Aboussie*
    Concurring Opinion by Justice Goodwin

Affirmed

Filed:   July 31, 2014

        *   Before Marilyn Aboussie, Chief Justice (retired), Third Court of Appeals, sitting by assignment.  *See* Tex. Gov't Code § 74.003(b).