**AFFIRM; Opinion Filed February 27, 2023**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-22-00798-CV**

_____

**AMOS HEARD, R.N. AND EMINENT MEDICAL CENTER, LLC,**
**Appellants**
**V.**
**APRIL ROBLES, R.N., Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-04495**

**MEMORANDUM OPINION**

Before Justices Carlyle, Goldstein, and Kennedy
Opinion by Justice Kennedy

In this accelerated appeal, Amos Heard, R.N. and Eminent Medical Center,

LLC (EMC) appeal the trial court's order overruling appellants' objections to

appellee April Robles, R.N.'s expert report and denying their motions to dismiss. In

two issues, appellants urge appellee's expert report fails to satisfy the requirements

of Chapter 74 of the civil practice and remedies code and that appellee's claims

should be dismissed. We affirm. Because all dispositive issues are settled in law,

we issue this memorandum opinion. *See* TEX. R. APP. 47.2((a), 47.4.

## BACKGROUND

Robles is a registered nurse who was employed as a nurse supervisor by EMC. In May of 2019, Robles became a patient of Dr. Stephen Courtney, the primary owner of EMC, for treatment of Robles' cervical spondylosis. On June 10, 2019, Dr. Courtney performed a facet injection surgical procedure on Robles at EMC. The procedure was to be performed with Robles under general anesthesia. Accordingly, an IV was placed in Robles' hand. The anesthesiologist ordered that Robles receive either Phenergan or Zofran for post-operative nausea. After the procedure, Amos Heard, a nurse who contracted to work for EMC and was supervised by Robles, administered Phenergan to Robles.

Robles returned to her home the same day of the procedure, and that evening, she noticed a large bruise on her hand where the IV had been placed. Within two or three days after the procedure, Robles' hand began to swell and she began experiencing severe pain and limitations in range of motion. A week after the procedure, Robles' symptoms had not improved and she was advised to seek treatment from a physician pain specialist. Robles questioned Heard about his treatment of her, and he informed her that he administered 25 milligrams of Phenergan to her IV instead of the 12.5 milligrams ordered by the anesthesiologist. Heard also informed Robles that he had not diluted the medication with any saline.

In August of 2019, Robles sought treatment from a pain management specialist who, after examining Robles and discussing her history, diagnosed her

with Chronic Regional Pain Syndrome (CRPS). Following her diagnosis, Robles sought treatment for CRPS, which included medical procedures and wearing a wrist brace. Around the same time, EMC engaged in corrective action against Robles, placing her on a thirty-day probation period and ultimately terminating her employment.

On April 9, 2021, Robles filed suit against EMC and Heard, asserting claims for negligence and gross negligence against Heard and EMC and sought to hold EMC vicariously liable for Heard's negligence. Her claims against Heard related to his administration of the drug Phenergan and "entering false information into [Robles'] medical record regarding the Phenergan dose administered to [Robles] . . . ." In addition to alleging vicarious liability for Heard's actions and omissions, Robles' claims against EMC related to negligence in retaining Heard, alleged failure to require Phenergan be managed in accordance with applicable medical standards, and alleged failure to revise its forms to include certain information regarding Phenergan.

In support of her claims, Robles filed expert reports of Kashif Saeed, MD and Maggie Ortiz, RN. Heard and EMC separately objected that these reports failed to comply with the requirements of the Texas Medical Liability Act. The trial court judge considered Heard's objections and signed an order sustaining only those objections as to Dr. Saeed's report, specifically those as to causation and the qualifications of Dr. Saeed, and ordering Robles to file an amended report within

thirty days of the date of the order.[1]  Robles filed an amended expert report of Dr. Saeed, and Heard and EMC objected to same, both arguing it did not cure the deficiencies of the initial report and moving for dismissal of the case.  After conducting a hearing on the objections to the amended report, the trial court judge signed an order denying appellants' objections.  This accelerated appeal followed.

### HEALTH CARE LIABILITY CLAIMS AND STANDARD OF REVIEW

The Texas Legislature enacted the Medical Liability and Insurance Improvement Act (MLIIA) in 1977 to reduce the excessive frequency and severity of health care liability claims, decrease the costs of those claims and in a manner that will not unduly restrict a claimant's rights any more than necessary, and make affordable medical and health care more accessible and available to the citizens of Texas.  *See Scoresby v. Santillan*, 346 S.W.3d 546, 552 (Tex. 2011) (citing Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, formerly TEX. REV. CIV. STAT. art. 4590i, § 1.02(b)(1)–(3), (5)).  In 2003, the legislature replaced the MLIIA with the Texas Medical Liability Act (MLA), repeating its 1977 findings and statements of purpose.  *See id.*  Both statutes have sought to deter frivolous lawsuits by requiring a claimant early in litigation to produce the opinion of a suitable expert establishing that his claim has merit.  *See id.*

---

[1] The record does not contain any reference to an order or hearing addressing EMC's objections to the initial report of Dr. Saeed or that of Ortiz.

The MLA defines "expert report" as a "written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *See* TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6). The expert report must represent only a good-faith effort to provide a fair summary of the expert's opinions. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). A report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute. *See id.* In setting out the expert's opinions on each of those elements, the report must provide enough information to fulfill two purposes if it is to constitute a good-faith effort. *See id.* at 879. First, the report must inform the defendant of the specific conduct the plaintiff has called into question. *See id.* Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit. *See id.* We review a trial court's determination about the adequacy of an expert report for an abuse of discretion. *See id.* at 877.

Similarly, we apply an abuse-of-discretion standard to review a trial court's determination that the expert is qualified. *See Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996). The MLA also sets forth what qualifications an expert witness in a suit against a health care provider must have in order to opine on the causal

relationship between the alleged departure from the accepted standard of care and the alleged injury, harm, or damages claimed. *See* CIV. PRAC. & REM. § 74.403(a). Such an expert must be a physician and otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence. *See id.* Texas Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact issue. TEX. R. EVID. 702.

## DISCUSSION

### I.  Dr. Saeed's Qualifications

In their first issue, appellants argue that neither Dr. Saeed's amended expert report nor his curriculum vitae establish his qualification to explain the use and effect of Phenergan or the connection between the administration of Phenergan and CRPS. More particularly, they argue nothing in his report or C.V. indicates that he has any knowledge, skill, experience, training, or education in treating patients with Phenergan, such that he is not qualified to render an opinion that an IV injury caused by the injection of undiluted Phenergan caused Robles' CRPS.

Dr. Saeed's report states he is a licensed medical doctor, board certified in physical medicine and rehabilitation with a sub-specialty certification in pain medicine, and that in his practice he diagnoses or treats approximately 15–20 patients annually with CRPS. He also declares he is familiar with the literature

–6–

involving the diagnosis and treatment of CRPS. Thus, his report indicates he has knowledge, skill, experience, training, and education related to the alleged injury of CRPS. *See Hollingsworth v. Springs*, 353 S.W.3d 506, 515 (Tex. App.—Dallas 2011, no pet.) ("An expert's qualifications must appear within the report itself or the expert's CV.").

Appellants argue that his report and C.V. do not indicate any such knowledge, skill, experience, training, or education related to the use and effects of Phenergan, the injection of undiluted Phenergan, or diagnosing or treating patients with IV injuries due to the injection of medication. Although Dr. Saeed does not specify any instances where he diagnosed a patient with CRPS as caused by an injection of Phenergan or other medication, his report cites his review of Ortiz's report on the standard of care related to the administration of Phenergan; the treatment notes of Dr. Christopher Chun, a pain specialist who diagnosed Robles with CRPS; and medical literature documenting a case of a woman diagnosed with CRPS after IV injection and subsequent vaccination. His report also refers to guidance from the Institute of Safe Medical Practices and the Infusion Nurses Society regarding the risks of tissue injury associated with injecting Phenergan intravenously and their related recommendations to inject Phenergan intramuscularly. He refers to these sources for his statements regarding Phenergan's risk of damaging blood vessels and surrounding tissues, particularly when injected intravenously and undiluted. Thus, we conclude the trial court judge did not abuse her discretion by determining that

Dr. Saeed's report demonstrates knowledge related to the use and effects of Phenergan, the injection of undiluted Phenergan, and the diagnosis of a patient with CRPS due to the injection of medication.

In reaching the foregoing conclusion, we distinguish the cases appellants rely on: *Hambrick v. Dominguez*, No. 05-17-00003-CV, 2017 WL 2536916, at *4 (Tex. App.—Dallas June 12, 2017, no pet.); *Matagorda Nursing & Rehab. Ctr., L.L.C. v. Brooks*, No. 13-16-00266-CV, 2017 WL 127867, at *6 (Tex. App.—Corpus Christi–Edinburg Jan. 12, 2017, no pet.); and *Tenet Hosps. Ltd. v. De La Riva*, 351 S.W.3d 398, 407 (Tex. App.—El Paso 2011, no pet.). In each of these cases, the appellate court concludes that, although the expert's report and C.V. demonstrate experience and training in their area of specialization, none indicated the expert had any knowledge, skill, experience, training, or education relevant to determine whether the alleged failure to meet the relevant standard of care could or would proximately cause the complained of injury. *See Hambrick*, 2017 WL 2536916, at *4 (concluding neither expert's report nor C.V. showed his qualification to opine on caring for patient with dislodged tracheostomy tube or caring for patient with tracheostomy tube who requires intubation, which was plaintiff's condition); *Matagorda*, 2017 WL 127867, at *6 (concluding the report and C.V. established expert was experienced pathologist, but there was nothing to indicate he had any knowledge, skill, experience, training, or education relevant to determine whether failure to abide by nursing safety standards could or would proximately cause a

–8–

patient to fall while trying to get out of his bed and thereby break his neck); *De La Riva*, 351 S.W.3d at 407 (concluding report failed to show board certified obstetrician and gynecologist was qualified to opine on the standard of care and causation as to infant hypoxia, neonatal resuscitation, and ischemic insult, which court concluded to be pediatric neurology matters).

In this case, as discussed above, Dr. Saeed's report indicated he had experience and training in diagnosing and treating patients with CRPS and had knowledge of the proper administration of Phenergan and how its improper administration could cause tissue injuries that could or would cause CRPS. We conclude this case is more similar to the case of *Livingston v. Montgomery*. 279 S.W.3d 868, 877 (Tex. App.—Dallas 2009, no pet.). In that case, we concluded the obstetrician and gynecologist was qualified to opine on whether a child's hypoxia and resulting neurological injuries were caused by actions and omissions during labor and delivery because the expert report explicitly stated he had "knowledge and expertise to recognize the perinatal progression of hypoxia due to inadequate oxygenation through a compromised uteroplacental unit . . . ." *See id.* at 877.

Here, we conclude that Dr. Saeed's report establishes he is qualified to opine on whether Robles' CRPS was caused by the injection of undiluted Phenergan. Accordingly, we overrule appellants' first issue.

## II.    Dr. Saeed's Report Regarding Causation

In their second issue, appellants argue Dr. Saeed's amended expert report fails to provide an adequate explanation of the causal connection between the allegedly negligent administration of Phenergan and the alleged injury of CRPS.

The adequacy of a report is determined by whether it represents an objective good faith effort to comply with the statutory definition of an expert report. *See Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011); *see also* CIV. PRAC. & REM. § 74.351(r)(6) (defining "expert report" as a "written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."). As stated above, in setting out the expert's opinions on each of those elements, the report must provide enough information to fulfill two purposes if it is to constitute a good-faith effort. *See Scoresby*, 346 S.W.3d at 556. First, the report must inform the defendant of the specific conduct the plaintiff has called into question. *See id.* Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit. *See id.* No particular words or formality are required, but bare conclusions will not suffice. *See id.* The report must address all the elements, and omissions may not be supplied by inference. *See id.*

In his report, Dr. Saeed refers to his review of Ortiz's report on the standard of care related to administration of Phenergan. He relies on her report to note that the size of the needle used to administer Phenergan was not appropriate to use, as it was in this case. "This, according to Nurse Ortiz, as discussed in her expert report, is because Phenergan is a vesicant (irritant that is acidic and harmful to blood vessels)." He also notes that the acidity of Phenergan can lead to tissue injury if injected intravenously instead of intramuscularly. He refers to the treatment notes of Dr. Christopher Chun, a pain specialist who diagnosed Robles with CRPS, as "most telling as it relates to following the timeline for evidence as to the cause of CRPS in April Robles." Those notes, as quoted in Dr. Saeed's report, indicate Robles experienced total numbness, right swelling, hyperesthesia of right hand, new since IV injection of undiluted Phenergan." Dr. Saeed's report goes on to discuss CRPS, noting that CRPS Type 2, which he opines Robles has, "most often occurs after a significant injury or trauma such as a fracture or post-surgery, resulting in a peripheral nerve injury." He then applies diagnostic criteria generally used in clinics and in his own clinical practice to Robles' case:

| Criteria | Robles' Case |
|---|---|
| Continuing pain, disproportionate to any inciting event | Dr. Saeed concluded she met this criteria based on her history and medical records |
| At least one symptom of three of the four categories:<br><br>1. Sensory<br>2. Vasomotor<br>3. Sudomotor/Edema<br>4. Motor/Trophic | 1. hypersensitivity,<br>2. skin color changes, and<br>3. edema<br>4. None |
| At least one sign in two or more of the categories:<br><br>1. Sensory<br>2. Vasomotor<br>3. Sudomotor/Edema<br>4. Motor/Trophic | 1. allodynia,<br>2. skin color changes,<br>3. swelling, and<br>4. limited range of motion of her right hand |
| No other diagnosis can better explain signs and symptoms | Robles noted these symptoms within two to three days of the procedure at EMC, testing and treatment that followed failed to identify any other likely causes for her symptoms, and Dr. Chun assessed her injuries and symptoms are directly related to intravenous injection of undiluted Phenergan into her right hand. |

Applying the above criteria, Dr. Saeed diagnoses Robles with CRPS Type 2 and

opines, in reasonable medical probability, that Heard's actions of administering

Phenergan with a small bore needle intravenously and undiluted failed to minimize the known risk of injury to Robles' nerves and tissues and caused sufficient trauma to result in the injury of CRPS.

The foregoing identifies the conduct Dr. Saeed calls into question: administering Phenergan with a small bore needle intravenously and undiluted. *See Scoresby*, 346 S.W.3d at 556. The report also provides a basis for the trial court to conclude that the claims have merit: the causal relationship between the described conduct and Robles' CRPS. *See id.* We conclude the trial court judge did not abuse her discretion in finding Dr. Saeed's report sufficient.

Appellants argue that because Dr. Saeed's report refers to literature stating that CRPS may occur from "trauma incidents as innocent as IV injections and vaccine administration," his report concedes that CRPS can occur absent any negligence, such that he fails to connect any alleged negligence in this case to any alleged injury. They also urge that Dr. Saeed's report is insufficient because it relies on the fact that the allegedly negligent administration of Phenergan preceded the onset of the CRPS to conclude the former caused the latter. Finally, appellants challenge the report's sufficiency because it does not indicate that Dr. Saeed considered other potential causes for Robles' CRPS.

As to appellants' first argument that Dr. Saeed's report fails to connect any alleged negligence to any alleged injury, we disagree. Dr. Saeed's report notes the risk of tissue damage associated with improper administration of Phenergan and that

–13–

CRPS Type 2 is caused by such trauma. Appellants' remaining arguments amount to complaints that Dr. Saeed fails to account for or otherwise eliminate other potential causes of Robles' CRPS. But, in satisfying the statutory requirement that the expert explain "how and why" the alleged negligence caused the injury in question, the expert need not prove the entire case or account for every known fact; the report is sufficient if it makes a good-faith effort to explain, factually, how proximate cause is going to be proven." *See Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 224 (Tex. 2018). Moreover, appellants' arguments would have us apply a standard of review similar to what we apply when reviewing the sufficiency of an expert's report to support a jury's finding. *See, e.g.*, *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017) ("Importantly, when the evidence demonstrates that 'there are other *plausible* causes of the injury or condition that could be negated, the plaintiff must offer evidence excluding those causes with reasonable certainty.'") (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997)). But, even when reviewing an expert report for sufficiency to support a jury's finding, the supreme court held a medical causation expert need not disprove or discredit every possible cause other than the one espoused by him. *See id.* (citing *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 218 (Tex. 2010)).

We overrule appellants' second issue.

Because we conclude the trial court judge did not abuse her discretion by overruling appellants' objections to Dr. Saeed's amended report, we likewise

–14–

conclude the trial court did not abuse its discretion in denying their motion to dismiss.

## CONCLUSION

We affirm the trial court's order overruling appellants' objections to appellee April Robles, R.N.'s expert report and denying their motions to dismiss.

/Nancy Kennedy/
NANCY KENNEDY
JUSTICE

220798F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

AMOS HEARD, R.N. AND
EMINENT MEDICAL CENTER,
LLC, Appellants

No. 05-22-00798-CV     V.

APRIL ROBLES, R.N., Appellee

On Appeal from the 192nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-21-04495.
Opinion delivered by Justice
Kennedy. Justices Carlyle and
Goldstein participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee APRIL ROBLES, R.N. recover her costs of this appeal from appellants AMOS HEARD, R.N. AND EMINENT MEDICAL CENTER, LLC.

Judgment entered this 27th day of February 2023.